# FRANKLIN vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Violent character of deceased, when admissible evidence.*—The character of the deceased as a violent, turbulent, blood-thirsty man, when it qualifies, explains, and gives point and meaning to his conduct, and tends to produce in the mind of the slayer a reasonable belief of imminent danger, is admis-

sible evidence for the defendant; and there are cases, also, in which it may be looked to, in determining the amount of provocation, and thus fixing the degree of the homicide; but the evidence in this case does not justify its admission on either of these grounds.

2. *Character how proved.*—The violent character of the deceased cannot be established by proof of isolated facts.

3. *Misconduct of jury.*—The separation of the jury, for a short time, while considering of their verdict, is a matter to be considered by the court on motion for a new trial, but is not a proper ground for a motion in arrest of judgment.

4. *Refusal of new trial not revisable.*—The action of the primary court on a motion for a new trial is not revisable in the appellate court.

FROM the Circuit Court of Pike.

Tried before the Hon. E. W. PETTUS.

INDICTMENT against Philemon J. Franklin for the murder of his brother, Christopher Franklin, by shooting him with a gun. The only evidence in relation to the killing was the testimony of a young man, then about sixteen years of age, who was an eye-witness of it, and whose testimony, in substance, is stated in the opinion of the court. On the part of the prisoner, evidence of his peaceable character was introduced; and he then offered to prove, " that the deceased, some time before the killing, attempted to shoot a woman in Coffee county, without any cause." This evidence, on objection by the State, was excluded, and the prisoner excepted. The prisoner then offered to prove, " that the general character of the deceased was that of a turbulent and dangerous man"; but this evidence also was excluded by the court, and the prisoner excepted.

After conviction, the prisoner moved to set aside the verdict, " because the jury were allowed to separate while the trial of said cause was in progress," and submitted an affidavit of the fact on which the motion was predicated; but the court overruled the motion, and the defendant excepted.

E. C. BULLOCK, for the prisoner.—1. While the bad character of the deceased, *per se*, does not in the slightest degree affect the character of the homicide, it yet becomes a legitimate and important subject of inquiry, where the circumstances make the precise grade of the crime doubtful, and

where the ferocious temper of the deceased might furnish a key to the whole transaction. The true test, as recognized by the cases of Quesenberry and Pritchett, (3 Stew. & P. 308 ; 22 Ala. 40,) seems to be this : If the evidence of the homicide is so complete and satisfactory that, whatever may have been the character of the deceased, it could not have been so connected with the killing as to change the grade of the offence, then the evidence is inadmissible; but, on the other hand, if sufficient doubt hangs over the transaction to make it probable that the character of the deceased may have had some bearing on the character of the offense, then the evidence ought to be admitted. The case at bar, tested by this rule, is pre-eminently one where the evidence should have been allowed to go to the jury. There was but a single competent witness to the homicide, and he a youth of not more than sixteen years. That he did not remember all that occurred, is admitted by himself; and that he leaves some undoubted chasms in the conversation, is sufficiently apparent. That the deceased loaded his gun, after having just fired it off; that he followed defendant to his house, where his own violence was met by words of kindness;· that he seized defendant by the hand,—a fact wholly unexplained ; and that the fatal shot was fired, apparently without any immediate cause, by one whose whole behavior up to that time had been peaceable,—all these facts make the question of character highly material, and might enable us to find in that character a solution of the mystery which certainly overshadows the whole affair.

2. That the misconduct of the jury was good ground for setting aside the verdict, see McCann v. The State, 9 Sm. & M. 465.

M. A. Baldwin, Attorney-General, contra.—1. The character of the deceased can never become a matter of controversy, under an indictment for homicide, except when involved in the res gestæ. When a homicide is committed under such circumstances as tend to show that the prisoner acted in self-defense, then the conduct of the person slain, construed with reference to his known character, becomes a part of the transaction ; but, when the evidence not only fails to show

any conduct on the part of the deceased which could raise the question of self-defense, but affirmatively shows (as it does here) that his situation and position precluded that question, his bad character cannot be received to mitigate the offense. On this point, see the following authorities : Wharton's Criminal Law, 172 ; Pritchett v. The State, 22 Ala. 42 ; Field v. The State, 14 Maine, 248 ; 8 Iredell, 344 ; 1 Hawks, 210 ; 9 Yerger, 342.

2. As to the motion in arrest of judgment, see Brister v. The State, 26 Ala. 133.

WALKER, J.—It has been twice decided in this State, and must now be regarded as law, that the testimony, in prosecutions for murder, may be such as will justify the admission of the bad character of the deceased as evidence for the accused.—Quesenberry v. The State, 3 S. & P. 308 ; Pritchett v. The State, 22 Ala. 39. In Quesenberry's case, this court declined to decide in favor of the reception of such evidence, because, the facts not being disclosed upon the record, it could not be perceived that the case presented an aspect justifying it. In Pritchett's case, the object of the court seems to have been to limit the admission of the evidence to cases where it may be considered a part of the *res gestæ*. In both cases, it is carefully and properly denied that the bad character of the deceased can, of itself, lessen the criminality of his murder. The rule is laid down in Oliver's case, (17 Ala. 599,) that " the necessity which exculpates the accused from guilt, need not be actual ; that if the circumstances be such as to induce a reasonable belief that such necessity exists, the law will acquit the slayer of all guilt." It seems to result as a sequence from this principle, that the character of the deceased for turbulence, violence, revengefulness, blood-shed and the like, where it qualifies, explains, and gives meaning and point to the conduct of the deceased, should be proper evidence. Conduct of a man of peaceable character and harmless deportment, might pass by without exciting a reasonable apprehension of impending peril ; while, on the other hand, the same conduct, from a man of notoriously opposite character and habits, might reasonably produce a consciousness of the most imminent peril, and a conviction of the necessity of

prompt defensive action. Whenever such bad character on the part of the deceased thus illustrates the circumstances attending a homicide, and the circumstances, *so illustrated,* tend to produce a reasonable belief of imminent danger in the mind of the slayer, the character, as mingled with the transaction, is a part of it, and is indispensable to its correct understanding. Such we understand to be, in effect, the decisions in Quesenberry's and Pritchett's cases.

To avoid detriment in the practical application of the rule, it must be understood neither, on the one hand, to excuse the taking of one's life because he is a bad man, nor, on the other, to be limited to those cases where the facts are such as to make it doubtful whether the homicide was committed *se defendendo.* The law cannot apportion the criminality of the homicide to the character of the deceased, and it cannot confine the rule to cases of doubt; because, in such cases, the defendant is entitled to an acquittal, and therefore, to so limit it, would deny to it all practical effect. When the conduct of the deceased, although in itself innocent, is such that, illustrated by his character, its tendency is to excite a reasonable belief of imminent peril, the evidence ought to be admitted, and the question of its effect left to the determination of the jury. It would be for the court to determine, in every case, whether the facts are such as will justify the admission of the evidence, as it is its duty to determine, before receiving in evidence the declarations of third persons, whether they are part of the *res gestæ.*

We are of the opinion, also, that there are cases in which the character of the deceased might be looked to, in determining the amount of provocation, and thus fixing the degree of the homicide.

We cite below the authorities which we have examined in reference to the questions above decided, some of which will be found to militate against our opinion, and to be less favorable to the accused. But the principles which we have laid down have the fullest sanction of our judgment, because they are consistent with the previous decisions of this court; and are, we think, founded in justice and reason.—Wharton's American Criminal Law, 172; Roscoe's Criminal Evidence, 39; Wharton's American Law of Homicide, 249, 229; State

v. Barfield, 8 Iredell's Law, 344, dissenting opinion of Battle, J.; State v. Thawley, 4 Harr, (Del.) 563 ; Wright v. The State, 9 Yerger, 342 ; Dyson v. The State, 26 Miss. 363.

We now turn to the testimony, for the purpose of inquiring whether the circumstances were such that, under the rule we have laid down, the character of the deceased, " as a turbulent and dangerous man," ought to have been admitted in evidence. The prisoner and the deceased were brothers, and worked together in a blacksmith shop. The deceased went to the prisoner's house, with a loaded gun, late in the evening, and near the door of the prisoner's house, used reproachful and angry words for some time, but did not use any language of menace, or indicating an intention, either present or prospective, to perpetrate violence upon the prisoner. The deceased afterwards went into the house, where the prisoner was at the time lying upon a bed. Immediately afterwards, the prisoner said to the deceased, "you have come here with your arms, and I have nothing to defend myself." " The deceased then placed his gun on the bed on which the prisoner was lying, and turned and walked off about ten feet to a table, and turned and sat down on the table, with his face to the prisoner. As the deceased turned to walk off from the bed, the prisoner seized the gun, cocked and presented it ; and at the instant when the deceased sat down on the table, the gun fired, and the load entered the breast of the deceased, who fell forward, with his head towards the bed, and his feet three or four feet from the table, and expired in about half an hour." The evidence conduced to show that the deceased carried the gun for the purpose of shooting birds, and it does not appear that he had any other arms. The deceased, upon the prisoner's suggestion of his defenseless condition, not only disarmed himself, but placed his gun in the power of the prisoner, and then walked away, with his back to his slayer ; and at the instant when he was seating himself, he received the contents of his own gun, from the hand of him in whose power he appears to have placed it,—a token of trust, and a sign of his own peaceful intention. There was not a word spoken, not an act done, which, illustrated by the character of the deceased, and construed by the prisoner in the light of that character, could tend to produce

a reasonable belief of imminent peril. Nor was there any act or word from the prisoner, which, explained by his character, could aggravate his conduct into such a provocation as to mitigate the offense to a lower degree.

The fact that the deceased had attempted to shoot a woman, was not admissible in evidence. If it had been a case in which the character of the deceased would have been competent evidence, it would not have been permissible to make out the bad character by isolated facts.—Nugent v. The State, 18 Ala. 521.

The separation of the jury for a short time, while they were considering of their verdict, is a matter to be considered by the court which tries the case, upon motion for a new trial, and is not a proper ground for motion in arrest of judgment; and the decision of the court below, on a question of new trial, is not revisable in this court.—Brister v. The State, 26 Ala. 107.

The judgment of the court below must be affirmed, and its sentence executed.