Cardozo, J. (dissenting).
There are two grounds upon which I think it so plain that the prisoner is entitled to a new trial, that I shall not examine any of the other exceptions. On the trial the prisoner offered to show threats of violence, which had come to Ms knowledge, made by the deceased against him, and also acts of violence committed upon Mm by the deceased after those threats. This evidence was excluded ; and the question arises whether, upon the case as disclosed upon the trial, that ruling was right. It may be conceded that generally mere threats, or even acts of violence, prior to the homicide, might not be admissible ; but that does not touch the point.
The question here is, whether such testimony is admissible, when there is proof from which the jury,may say that the deceased assaulted the prisoner when the fatal act was done. There was evidence of a scuffle between the parties before the firing of the pistol; and the question is, whether, in such a case, when there is no testimony as to which began the conflict, evidence of threats and of previous violence by the .deceased against the prisoner, is not admissible as bearing upon the question of who commenced the attack, and “as illustrating the circumstances attending the homicide, and as tending to produce a reasonable belief of imminent danger in the mind of the slayer.” That it is, see Franklin v. State, 29 Ala., 14.
After the exhaustive examination of the cases by Chief Judge Davies, in People v. Lamb, 2 Abb. Pr. N. S., 148; S. C., 2 Keyes, 360, I think it must be con *326 sidered indisputable, that when there is evidence from which the jury may find that the deceased attacked the prisoner, even the general character of the deceased, if shown to have been brought to the knowledge of the prisoner, may be proven upon his: part, “upon the principle that it tends to rebut the presumption of malice, or to show that the killing was in self-defense, or under the reasonable apprehension of great bodily harm” (Id., 371).
And if the general character of the deceased may, under such circumstances, be shown, how much more clear is it when, as in this case, there was evidence from which the jury-might have concluded that Smedick assaulted the prisoner at the very time of the homicide, that evidence of his “particular character” (so to speak) as respects this prisoner—evidence of ill-will toward him—evidence of threats of attack, to the knowledge of the prisoner—evidence that Smedick had bruised and beat the prisoner, to the peril of his life, on several occasions prior to the killing—should be received as bearing upon the circumstances of the case, and as tending to elucidate whether or not, when Smedick was killed, he was engaged in attempting to execute the purpose which it was sworn he had declared he designed, .“to run” the prisoner “to death.”
The exception in this respect, which was taken by the counsel for the prisoner, is well founded. The other exception to which I shall allude is to the evidence, which was admitted under the objection of the prisoner, that the witness Real had been in the penitentiary. That his evidence prejudiced the prisoner, since it cast a reflection upon his witness, cannot be doubted; and it is clear, upon authority, that .the prisoner was entitled to insist upon his legal right to have the record produced, even if the witness were willing to answer. The witness might waive his privilege, but he could not waive the right of the accused.
That the ruling on this subject was erroneous was *327 scarcely disputed on the argument, and is settled by the court of appeals, in Newcomb v. Griswold, 24 N. Y., 298, where the precise point was decided. It is supposed, however, that the effect of that case is overcome by the decision of the same court, in Great Western Turnpike Co. v. Loomis, 32 N. Y., 127. But that is obviously a mistake.
There is no inconsistency between the two cases; and it is not pretended that the former case was intended to be overruled by, or was considered, or even referred to, in the latter. In fact, the question decided by New-comb v. Griswold, and that presented and decided by Loomis’s case, are entirely distinct. The latter case simply holds, that the question of the extent to which inquiry not relevant to the main issue should be allowed, for the purpose of degrading a witness, rests in the discretion of the circuit judge, and will not be reviewed on appeal, unless in a plain case of abuse of discretion. But it nowhere intimates that the legal rule which prevents a record being proved by parol, rests in the discretion of the court.
The extent to which inquiry into irrelevant subjects, with a view to discredit a witness, shall be allowed, is discretionary. It may be allowed, or it may be refused. But if allowed, at all, and to the extent to which it is permitted, the same rules of evidence apply which control as to the competency of testimony addressed to the main issue. It is to be remarked also, that in the case last cited the court was asked to grant a new trial, because the circuit judge had not permitted the witness’ general character to be attacked to the extent that the party desired. The court said, that subject rested in the discretion of the judge below, and might have been wholly excluded without furnishing ground for exception ; but it did not say, and I think no case can be found in which it ever had been said, that the admission of incompetent evidence, tending to discredit a witness, rested in the discretion of the judge, and *328 would not be cause for an exception' in favor of the party prejudiced. I am not willing, in a case involving life,-to split hairs as to whether an exception was noticed on the record with entire precision, when it appears by the error-book that the objection was actually taken, and when the district-attorney treats the exception claimed by the prisoner as being properly in, and presented by, the case.
On the argument the district-attorney distinctly stated that the whole subject matter of this objection was before the court, and he so treats it in his printed points. . I cannot doubt, therefore, that the exception should be considered as duly entered; and certainly, if any question exists on that point, instead of refining away the prisoner’s life, when we cannot say that an error was not committed, we should call the district-attorney before us, and ■ have him say whether the exception noted was to apply to the question immediately preceding it, or whether it referred, as by his concession on the argument it must have done, to the whole inquiry upon that subject, to which objection had been taken and noted. In a case involving only money, a mere slip in formally entering an exception after objection duly made, would be relieved against and corrected by the court; and, so far as I am concerned, I shall not consent to be less considerate when life is involved. For both these errors, I am of opinion that a new trial should be ordered.
I am the more readily brought to this conclusion, because, though no exception was taken to that particular, I think the learned judge committed an error in the charge, which tended' greatly to the prejudice of the prisoner, and for which he would be entitled to a new trial under the statutes of 1855 and 1858, if the indictment had been tried in the sessions instead of the oyer and terminer. The case was presented to the jury by the learned judge, upon the theory that the prisoner must be convicted, either of murder, or else of *329 manslaughter in the fourth degree. In other words, the jury were told that they had no alternative between convicting him of the highest crime, or of an offense of a very light degree. Had they been instructed that under the law and the facts they might convict of the serious crime of manslaughter in the third degree, perhaps they might have- taken that view of the case, and rendered a verdict less severe upon the prisoner than they did; and a charge which took away the opportunity for them to do so, operated unfavorably to the prisoner. The charge took from the prisoner the benefit of having the jury inquire whether his case did not come within the definition of. manslaughter in the third degree; and as the evidence certainly would have warranted such a verdict, the prisoner was prejudiced by having that subject withdrawn from, or not presented to, the consideration of the jury; as that is a subject on which life depends, and the jury, upon a trial conducted certainly in not the most auspicious way for- the prisoner, unanimously recommended the accused to. mercy.-
So much doubt as to the measure of his guilt seems to exist, that we should not be astute to find grounds to uphold the verdict, but should incline to a view by which the case should be again submitted to a jury, under proper instructions, so that complete justice may be done to the prisoner as well as to the people, and so that life be taken through the instrumentality of the law, and in vindication of its supremacy, only when all its forms and requirements have been strictly and accurately observed. I am for a new trial.