# REPORTS

## OF

# CASES ARGUED AND DETERMINED

### AT JANUARY TERM, 1861.

———◦❂◦———

## BEN (A SLAVE) vs. THE STATE.

[INDICTMENT AGAINST SLAVE FOR MURDER OF ANOTHER SLAVE.]

1. *Admissibility of character of deceased, as evidence for prosecution.*
   On a trial for murder, the prosecution cannot adduce evidence of the peaceable character of the deceased, when it has not been assailed by the prisoner.
2. *Dying declarations.*—The dying declarations of the deceased, respecting the state of feeling which existed between himself and the prisoner, are not competent evidence for the prosecution.

FROM the Circuit Court of Baldwin.

Tried before the Hon. C. W. RAPIER.

THE prisoner in this case, a slave, was indicted for the murder of another slave, and pleaded not guilty to the indictment. "On the trial," as the bill of exceptions states, "during the opening examination of the witnesses for the prosecution, the State proposed to prove the good character of the deceased, as a peaceable, well-behaved negro. The prisoner objected to this evidence; but the court overruled the objection, and allowed the evidence; and the State thereupon proved, that the deceased was a person of good character, was a member of the church, and was of

peaceable character ; to the admission of which evidence the prisoner excepted. The prisoner offered no evidence of the character of the deceased during the trial, nor was any such evidence given in his behalf."

"During the progress of the cause, and in the opening examination of the witnesses for the prosecution, and after several witnesses had been examined as to the facts of the homicide, the master of the deceased was placed on the stand by the State as a witness, and testified, that he came to the deceased after he had received his death-wounds, and was satisfied that he would die, and told him so ; that the deceased was conscious that he would die from his wounds, and so expressed himself, and directed his fellow-servants what to do with the little effects he had ; that this was early in the morning, and that the deceased died on the following evening, about night. The State then proposed to give in evidence the declarations of the deceased to his master, respecting the state of feeling between himself and the prisoner. The prisoner objected to the introduction of this evidence ; but the court overruled the objection, and admitted the evidence. The master thereupon testified, that the deceased said, 'he was knocked down, but did not know who did it ; that some time before he had met the prisoner, (who was a runaway,) near the premises of his master, and told him that he had better go home, and that he would tell his master if he did not ; to which the prisoner replied, that he intended to do so the next day.' To which ruling and admission of evidence the prisoner excepted."

SMITH & CHANDLER, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra.*

A. J. WALKER, C. J.—It has been decided in this State, that the bad character of the deceased is competent evidence for the accused, where the circumstances are such that they would be illustrated by such character. The reason upon which that decision rests, is, that the slayer

must be reasonably presumed to act upon the circumstances surrounding him, as they are colored by the bad character of the deceased; and that, therefore, it is but just to the accused that the jury should know that character. We do not think that this reasoning requires us to hold, that the State may go into evidence of the peaceable character of the deceased, when it is not assailed on the part of the accused. If the character of the deceased was that of a peaceable man, the circumstances may safely be left to speak their own language: it is not requisite to their interpretation that the character should be known.

The character of a witness for truth cannot be supported, until it has been assailed; and, on the other hand, the character of one charged with a criminal offense, can not be assailed, except in reply to evidence of good character. These cases show that, in holding the bad character of the deceased admissible for the accused, and denying that good character is admissible for the State, we have analogies in the law to support us. We think it much safer not to extend the rule, in reference to the admissibility of the character of the deceased, so far as to permit the State to adduce primarily evidence of good character. The authorities, with the exception of *Dukes v. State*, (11 Ind. 557,) to the report of which we have no access, give the rule no greater extension, than to embrace evidence of bad character adduced by the defendant; and we think it safer to so limit the rule.—*State v. Hicks*, 27 Miss. 588; *Monroe v. State*, 5 Georgia, 137; *State v. Tackct*, 1 Hawks, 216; *State v. Barfield*, 8 Iredell's Law, 344; Wharton on Hom. 249; *Franklin v. State*, 29 Ala. 14; 3 Greenleaf on Ev. 27.

[2.] The court erred, in permitting the State to give in evidence the dying declaration of the deceased, as to the state of feeling existing between himself and the prisoner. We decided in *Mose v. State*, (35 Ala. 421,) that the admissibility of dying declarations was restricted to statements "as to the circumstances immediately attending the act, and forming a part of the *res gestæ*." That decision is conclusive of the question now presented.

Judgment reversed, and cause remanded. The prisoner must remain in custody, until discharged by due course of law.