CASE 34—INDICTMENT—December 1.

# Parker v. Commonwealth.

APPEAL FROM SCOTT CIRCUIT COURT.

1. HOMICIDE—EVIDENCE AS TO HABIT OF DECEASED AS TO CARRYING PISTOL.—Upon the trial of appellant for murder the question as to whether the deceased was carrying a pistol at the time of his death being a material one under the evidence, it was incompetent for the Commonwealth to prove by the wife of the deceased that he did not

Parker v. Commonwealth.

carry a particular pistol, and also to prove by other witnesses that deceased was not in the habit of carrying a pistol, and that they had never seen him have a pistol.

2. SAME—EVIDENCE AS TO CHARACTER OF DECEASED —The general character of the deceased not being put in issue by the accused, the Commonwealth had no right to introduce evidence to sustain it. Besides, the statements of witnesses as to the habit of deceased as to carrying a pistol were not competent as evidence of general character.

GEORGE W. DENNY, JR., AND OWENS & FINNELL FOR APPELLANT.

1. The question as to whether the deceased carried a pistol at the time of the killing being a vital one, it was incompetent to allow the Commonwealth to introduce witnesses to prove that he was not in the habit of carrying a pistol, or that they (witnesses) had never seen him with one. (Wharton's Criminal Law, sec. 1032, 6th ed.; Civil Code, sec. 48.)

2. It was error to allow the admission of testimony to show that the deceased was not a drinking man, that being wholly irrelevant to the question of the shooting

3. There being no evidence of malice on the part of the defendant, the instruction authorizing a verdict of murder should have been qualified to one for manslaughter. (Mockabee v. Commonwealth, 78 Ky., 380; Fleetwood v. Commonwealth, 80 Ky., 1.)

4. Defendant should have been granted a new trial upon the affidavits of the three witnesses whose testimony was discovered after the trial.

WM. J. HENDRICK, ATTORNEY-GENERAL, AND C. J. BRONSTON FOR APPELLEE.

1. Testimony showing the habit of the deceased as to carrying a pistol was competent and material, as was also the evidence that he had no pistol when he left home that morning.

2. In establishing the character of the deceased, which had been assailed, the question as to whether he was a drinking man may have been asked incidentally, but it was purely incidental and should not be considered by the court.

3. The instruction as to the law of self-defense was most liberal to the defendant, and he can not be heard to complain. (Mockabee v. Commonwealth, 78 Ky., 380; Fleetwood v. Commonwealth, 80 Ky., 1; Dilger v. Commonwealth, 88 Ky., 551.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant was convicted of the crime of murder and sentenced to death. Beside himself and the deceased

no person was present when the homicide with which he is charged took place; and the Commonwealth seemed to rely for proof of his guilt principally upon confession made to the officer who arrested him, which does not differ materially from his own account of the occurrence as a witness upon the trial.

It appears that in 1876 he removed from Scott county, Kentucky, where he was born and raised, to the State of Kansas, and in June, 1888, returned to visit the family of his father and brothers and sisters. On Sunday night next before Monday, when the killing was done, he heard from relatives who had attended church that deceased, S. T. Connellee, Jr., and who was a constable, had some sort of legal process against him, which he seemed to suppose was a warrant of arrest. And the next day, before noon, he had an interview with his brother-in-law Penn, during which he asked whether Connellee was a man who would be likely to shoot him if he ran in order to avoid arrest, and was told he had better not attempt it. But Penn, at the same time, suggested it was not a warrant of arrest Connellee had, but simply a summons in a civil action brought by a certain firm against him for debt. Whereupon he replied, if that was all, he did not care about the process, as he was able and would upon his return to Kentucky, in August, settle the debt.

His version of the homicide as stated on the witness stand is, that after parting from his sister, who left their father's house for her own home, he took an old shot-gun, supposed from the caps being in place to be loaded, for the purpose of killing a

squirrel on his way for his father who was an in-
valid, and started to the house of Penn, his brother-
in-law, in order to get him to carry accused to
Georgetown next day on his route home in Kansas.
That when he got beyond the barn, about one hun-
dred and fifty yards from his father's house, he heard
a man say to him to halt, at the same time walking
rapidly down a hill toward him, and also asking if
his name was Parker. To that question accused an-
swered, yes, and then asked his name ; but instead of
answering, Connellee ordered him to lay down his
gun. Accused then commenced backing toward his
father's house when he was again ordered to lay
down his gun, and just as Connellee got to a drain
at foot of a hill where his body was subsequently
found, he, the third time, ordered the gun laid down,
and being asked by what authority he ordered it
done, he placed his hand behind him, drew his pistol,
and bringing it on line with accused said : " This is
my authority." Accused having his gun grasped by
the barrel, and as he swore, believing Connellee was
going to shoot, raised it quickly, and just as he pressed
the trigger, but too late, deceased said his name was
Connellee. As the gun was fired Connellee fell, and
accused seeing he was dead took the pistol, went to
his father's house and told those present he had
killed a man at the place described, he supposed was
Connellee, and in a few minutes left and went to
house of his brother-in-law, where he made the same
statement. He did not, at either place, relate the
circumstances under which the killing occurred, but
after remaining a short time left the latter place,

and was not arrested until 1890, being then found in Chicago and brought to Scott county for trial.

The principal ground for reversal is incompetent testimony, which, at instance of the Commonwealth, and over objection of defendant, the lower court permitted to go to the jury.

The particular testimony complained of is that of Mrs. Connellee, widow of the man killed, who stated her husband had, while hunting for accused, a pistol at home, a small pistol, and in her words, "he didn't carry this pistol (exhibiting it to the jury) during the week he was looking for Parker;" also that of S. T. Connellee, Sr., his father, who stated his son was not in the habit of carrying pistols. Besides the testimony of these two witnesses, which was given in chief, two others were permitted to state in rebuttal that they never saw deceased have a pistol. If deceased did have a pistol at the time and place he was killed, the testimony of accused is consistent and reasonable; besides, there are circumstances tending to corroborate it. Although deceased had the summons in his hands a week, there appears no satisfactory reason why he did not or could not sooner execute it; for there is no evidence accused attempted to conceal himself or otherwise prevent service. Indeed, he did not know, nor, so far as the evidence shows, have any reason to believe deceased had the summons until his relatives returned from church and informed him Sunday night. It appears that deceased was twice, during Friday or Saturday prior to the homicide, at the house of the father of accused, and actually took dinner there, yet made no

inquiry about him or effort to serve the summons; and on Monday, instead of going direct to the place where it appears to have been well known accused was and could be found, he secreted his horse in the woods a mile away, where the animal remained for two or three days before found, and was thence approaching the rear part of the premises when he encountered accused on his way to the house of Penn. The conduct of deceased in keeping the summons in his possession a week without making proper effort to serve it, though apparently anxious to do so, and in making public the fact he had the summons while acting as if hunting a fleeing felon, show a lack of address, experience and knowledge of the duties of the office, not inconsistent with his peremptory order to accused to halt and lay down his gun, when all required was for him to quietly deliver or offer to deliver the summons.

But if deceased did not draw or have a pistol when shot the testimony of accused was false, and the killing inexcusable. Therefore, if the evidence in question be incompetent, he was substantially prejudiced thereby.

As the record stands, the testimony of Mrs. Connellee was incompetent and misleading, because she stated simply her husband did not have the particular pistol she exhibited to the jury, which proved nothing.

The statement of S. T. Connellee, Sr., if treated as evidence bearing upon the question of fact, whether deceased had a pistol when killed, is too remote to be admitted, serving only to mislead. And the same

objection applies to the testimony in question of the other two witnesses.

It seems to us if such indefinite statements could be regarded pertinent or proper for any purpose, it would be as evidence of general character of deceased. But that was not attacked or put in issue by accused, and, consequently, the Commonwealth, as is well-settled, had no right to introduce testimony to sustain it; and especially was it error to admit as evidence of general character a statement of a witness that deceased was not in the habit of carrying pistols, and of two others they never knew of his doing so.

Wherefore the judgment is reversed and case remanded for a new trial consistent with this opinion.