## JOHN BAYS v. THE STATE.

### No. 3825.    Decided January 23, 1907.

**1.—Murder in Second Degree—Evidence—Character of Deceased.**

Upon trial for murder where defendant testified that deceased made a demonstration toward him just before he shot him in the dark, and that he thought deceased might be going to cut him with a knife, there was no error in cross-examination to ask the defendant whether he ever knew deceased had tried to cut anybody with a knife, which he answered in the negative. This did not put the character of deceased in issue.

**2.—Same—Charge of Court—Manslaughter—Insult to Female Relative—Time of Provocation.**

Upon trial for murder where the evidence showed that the sole cause for reducing the homicide to the grade of manslaughter was insulting words or conduct towards a female relative communicated to defendant, it was error to instruct the jury that the provocation must have occurred at the time of the homicide.

**3.—Same—Charge of Court—Adequate Cause—Truth of Insult.**

Upon a trial for murder where the evidence showed that the deceased had attempted illicit intercourse with defendant's wife, and that this was interposed as a defense, there was no error in the court's charge that if the jury believed that defendant had been informed that deceased had been guilty of insulting words and conduct to defendant's wife, etc., as being too restrictive in confining adequate cause to an actual insult.

**4.—Same—Charge of Court—Different Communications Regarding Insult.**

Where upon trial for murder the evidence showed that the first communication which defendant received of the insult by deceased to his wife was of a very general character, and that the second communication was given to him by his wife in a direct way, after defendant had met deceased, whereupon he at once called upon deceased, and the homicide occurred, the court should have charged with reference to both communications.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*C. O. James* and *C. E. Sheppard,* for appellant.—On question of character of deceased: Melton v. State, 83 S. W. Rep., 822. On question of insulting conduct to female relatives as sole adequate cause: Eanes v. State, 10 Texas Crim. App., 442; Tucker v. State, 50 S. W. Rep., 711. On question of different communications with reference to insulting conduct to female relative: Melton v. State, 83 S. W. Rep., 823; Jones v. State, 26 S. W. Rep., 1082; Messer v. State, 63 S. W. Rep., 643; Hudson v. State, 66 S. W. Rep., 669.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of seven years; hence this appeal.

The facts show that appellant and deceased, Mathew McLeroy, were brothers-in-law, deceased having married the sister of appellant. At the time of the homicide deceased and his wife were living at J. M. Hodge's house, who was appellant's grandfather. Appellant himself lived some quarter or half a mile distance from Hodges. On a few nights before the homicide, according to the testimony of Mrs. Hodge, she saw deceased in her house go to the bed of appellant's wife and get in bed with her, appellant at the time being absent. On the morning of the homicide she testified that she told appellant that she had seen things not right about his wife, but did not tell him the details of what she saw. Appellant himself testifies that his grandmother, Mrs. Hodge, did not tell him the day before the shooting occurred, the details of what she knew about his wife. "She told me in substance there was something going on wrong between my wife and Mathew McLeroy; said she seemed to be fast." It appears that after this information from Mrs. Hodge that appellant went back to Hodge's and ate supper

and met deceased there, but nothing occurred between them; that after supper he and his wife started home, and on the way his wife told him that Mathew McLeroy had crawled to her bed and said that he would cut her throat if she did not do business with him. About the time she had finished telling him they had gotten home, and he told her, "we will go back and see him"; that they went back to Hodge's and walked into the house, and appellant said to deceased, "Mac, let's go possum hunting"; deceased said he did not feel like it. Deceased, McLeroy, was then standing in the west door. Appellant then said to him, "Now, Mac," and deceased jumped at him and he shot him; shot him three times. On the point of the killing deceased's wife testified that appellant came back to the house after he had left; came into the room and said, "Mac, let's go possum hunting," and deceased said he did not feel like it, whereupon appellant drew his pistol and shot deceased; that deceased had nothing and made no demonstrations against appellant. This is a sufficient statement of the facts of the case to discuss the assignments.

Appellant objected to this testimony: While he was on the stand in his own behalf the State on cross-examination asked him the following questions: "How long have you known the deceased? How long had he been your brother-in-law? During that time had you ever known him to cut anybody with a knife? Had you ever known him to try to cut anybody with a knife?" These questions were objected to because same involved the character of deceased and appellant had not put this in issue. The objections were overruled and appellant answered: "I had known deceased about six years. He had been my brother-in-law about five years. During that time I had never known him to cut anybody with a knife; never knew him to try to." The grounds of objection to this testimony was that it put in issue the character of the deceased when no attempt had been made by appellant to put such character in issue. It is not competent for the State to take the initiative in putting the character of the deceased in issue. The question, however, here is was this character testimony? Of course, it will not be contended that it was proof of character by reputation. It was only what the appellant knew of deceased, he testifying that deceased made a demonstration toward him just before he shot him, and in the dark he thought he might be going to cut him with a knife. The cross-examination of the witness on this point we do not believe was an invasion of the rule against the State putting the character of the deceased in issue.

Appellant excepted to the charge of the court on manslaughter in that it told the jury that the provocation must arise at the time of the commission of the offense, and not be the result of some other provocation, whereas the appellant contends that the only provocation which he claimed reduced the offense to manslaughter was a previous provocation, that is, a former insult to appellant's wife. An examination of the court's charge shows the court pursued the statute in defining

manslaughter, and, among other things, charged the jury as follows: "By the expression, 'Under the immediate influence of sudden passion' is meant: first, that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation; second, the act must be directly caused by the passion arising out of the provocation," etc. Subsequently, the court instructed the jury as follows: "Adultery of the person killed with the wife of the person guilty of the homicide, provided the killing occur as soon as the fact of the illicit connection is discovered; or insulting words or acts or conduct of the person killed toward a female relation of the party guilty of the homicide, are adequate causes." And also told the jury that the killing must take place in such cases upon the happening of the insulting acts or words or so soon thereafter as the party killing may meet with the party killed after having been informed of such insults, and then applying the law to the facts, instructed the jury as follows: "If, therefore, you believe from the evidence that the defendant had been informed that the deceased, Mathew McLeroy, had been guilty of insulting words, acts or conduct towards the wife of the defendant, and if you believe that just prior to the killing the defendant was informed of such conduct, on the part of the deceased, towards the wife of the defendant, and if you believe soon thereafter the defendant met the deceased and that he shot and killed the deceased with a pistol, and that the information which he had received produced in his mind such a degree of anger, rage, sudden resentment, or terror, that his mind was incapable of cool reflection, then, in that event the defendant would be guilty of manslaughter, and you should so find." Without going into a discussion of the decisions on this subject, we will merely remark that in a case where the sole cause for reducing a homicide to the grade of manslaughter is insulting words or conduct towards a female relation communicated to defendant, that it is error to give a charge instructing the jury that the provocation must occur at the time of the homicide. See Eanes v. State, 10 Texas Crim. App., 421; Niland v. State, 19 Texas Crim. App., 166; Williams v. State, 24 Texas Crim. App., 637, and Richardson v. State, 28 Texas Crim. App., 217.

Appellant also contends that such charge was too restrictive in that it confined the adequate cause to an actual insult by deceased towards appellant's wife, and that the jury in this respect should have been told that appellant was authorized to act on the information if he believed it was true whether the insult ever occurred or not. We believe the principle announced in appellant's contention is correct, and certainly in every case where the fact of the insult is controverted the court should charge as suggested by appellant. We do not believe, however, that the charge given is subject to the vice insisted on by appellant. The charge tells the jury if they believe the appellant had been informed that deceased McLeroy had been guilty of insulting words, etc., towards his wife, and if you believe soon thereafter the

defendant met the deceased, etc. We do not believe this charge tells the jury that the insult must have existed as a fact.

Appellant further contends that inasmuch as there were two communications of the alleged insult to appellant's wife made to him, one by his grandmother in the morning, and one by his wife that night, that the jury's attention should have been specially directed to the state of facts on that subject, and they should have been instructed to the effect if they believed that the wife communicated the insult to appellant that night and he believed same and then on first meeting deceased slew him, on account of passion engendered on that account, the offense would be no more than manslaughter. We believe in view of the evidence in this case that this character of charge should have been given. The jury may have under the general charge believed that the insult had been communicated by the grandmother of appellant in the morning, and there had been a meeting between appellant and deceased since that time, and that the subsequent communication by the wife to appellant could not avail him. It will be remembered that the testimony shows the communication by the grandmother in the morning was of a very general character; merely informed appellant that his wife seemed to be pretty fast, and that all was not right between her and deceased. Appellant himself testifies that his wife communicated the insult to him that night; went into details and told that deceased had come to her bed and threatened to cut her throat if she did not submit to him; that he immediately went back and shot deceased. See Richardson v. State, 28 Texas Crim. App., 216, and Loyd v. State, 10 Texas Ct. Rep., 920. In the latter case it was held that where defendant was informed of carnal intercourse between his wife and deceased, and did not believe it, and afterwards met and conversed with deceased, but subsequent to this he had a talk with his wife on the subject and she confessed to him that deceased had been having carnal intercourse with her; and on the next morning he met deceased and killed him, that a charge of manslaughter should have been given, predicated on this state of facts. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*