## L. N. CODY v. STATE.

No. A-3925.   Opinion Filed April 23, 1923.
(214 Pac. 201.)

(Syllabus.)

1.   Homicide—Exclusion of Testimony of Deceased Husband's Abuse of His Wife not Erroneous. Where a third person is charged with the murder of a husband under the circumstances here, it was not error for the court to exclude proffered testimony of domestic abuse on the part of the deceased husband towards his wife.

2.   Witnesses—Impeachment by Testimony Given at Preliminary or Other Trial. Where a witness is sought to be impeached by showing that the testimony given by him at the final trial is in conflict with that given at the preliminary or some other trial, the attention of the witness must be called to the particular facts concerning which a discrepancy is sought to be shown. Under such circumstances it is not error for the court to refuse to permit the introduction of the entire testimony of the witness given at the preliminary trial.

3.   **Homicide—Good Character of Deceased to Rebut Evidence of Quarrelsome Disposition.** It is permissible for the state to offer evidence of the good character of the deceased where evidence that he was of a turbulent or quarrelsome disposition is offered in support of defendant's claim of justification.

Appeal from District Court, Blaine County; Thos. A. Edwards, Judge.

L. N. Cody was convicted of murder, and he appeals. Affirmed.

Seymour Foose and R. C. Brown, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.   L. N. Cody, plaintiff in error, here referred to as the defendant, was by information filed in the district court of Blaine county on May 26, 1920, charged with the murder of D. D. Scott.   At the trial, September 12, 1920, by a verdict of the jury, the defendant was found guilty as charged, and his punishment fixed at imprisonment in the state penitentiary for life.   From the judgment on this verdict he has appealed to this court.

The record in this case is voluminous, containing 887 pages. The facts immediately surrounding the tragedy are simple, and may be summarized briefly.   On the 3d day of May, 1920, the defendant was traveling alone on a public highway in a Ford car, when he observed the deceased, D. D. Scott, in company with his wife, traveling in a Ford coupe, approaching from the opposite direction.   Defendant drove to the side of the road, stopped his car, and got out in the road, throwing up his hand as a signal to the deceased to stop.   The deceased, in obedience to the signal, stopped, and the defendant approached the deceased, who had remained in his car, and said to the deceased that he understood that deceased had told

that defendant had been writing letters to Mrs. Scott. The deceased replied, in substance, that he had made such a statement, and that he could prove that it was true. Defendant then said to the deceased, "You are a d—— liar." The deceased replied, "I can lick you right now;" to which defendant retorted, "Get out and do it." Deceased, then got out of his car, and defendant shot and killed him. The deceased was unarmed. Defendant claimed that he fired the fatal shots in his apparent necessary self-defense.

The defendant, in his petition in error, has set out 27 assignments of error. In defendant's brief in support of his petition in error but three of these assignments are seriously urged; the others, therefore, are waived, and may be assumed to be without merit.

Inez Scott, the wife of the deceased, appeared as a witness for both the state and the defendant. It was developed from her testimony that her domestic life in some particulars was turbulent; that her husband had objected to her corresponding with the defendant and others, and that the deceased suspected that she had been guilty of improper relations with the defendant. On cross-examination of this witness the court refused to permit the defendant to show the following, proffer of which was made in the absence of the jury, and the exclusion of which defendant claims was error:

"We offer to prove that the witness and her husband, the deceased, had serious domestic trouble prior to her beginning work at the store at Hydro, prior to her actual acquaintance with the defendant, and between that time and the marriage of the witness to the deceased, and that such trouble led to their separation, or to the witness' leaving him once entirely, and at another time preparing to leave him, and personally removing her goods—partially removing her goods, clothing; such trouble consisting partly of the following facts: That in April, 1919, the witness left the deceased and went

to Edmond, and remained there for a period of two or three weeks, without his knowing her whereabouts, and that she left on account of his choking her and beating her head against the barn post, in which was a nail that wounded the back of her head, then pushed her away and she fell down; that he afterwards found her, and induced her to return to him; that a little earlier in the same spring, 1919, he had struck her in the face and knocked her back on a little stand table, upon which she fell and hurt her side, and which disabled her for about two weeks; that in the fall of 1919 he struck her and knocked her down among the sheep, horses, and cows in the barn lot while she was carrying corn to feed them; that he choked her once before that; that he was in the habit of cursing her, slandering her, and making insulting remarks to her, and false insinuations; that this commenced soon after her marriage, and continued up to the time of her first employment in the Farmers' Union Store, and that he would insist on her getting out and earning some money, and when she would go and try to get a position or contract for a position he would then interfere, and change his mind, and tell her she couldn't take that position, one occasion being her employment for a school at Hydro, in 1918, and he told the school board she could not teach there; she then went to Gotebo and signed a contract to teach there, and had to give that up; that while on the farm she worked in the field and among the stock, handling the mules and live stock, tending them generally, picking cotton, and doing such work as that; that, furthermore, we want to prove that her husband was what is commonly called insanely jealous of her, and constantly suspicious, and kept her at home most of the time, and would hardly let her go to town or any place that she desired to go without either going with her or sending somebody with her.''

From the testimony of this witness and from other evidence adduced it appears that the defendant knew that the deceased and his wife had had some differences, and knew that the deceased suspected him of being implicated in some of the affairs that brought about these disputes. However, it would be foreign to the issues in this case to introduce testi-

mony relating to quarrels and differences between the deceased and his wife in which the defendant had no interest, or in which he was not in any way implicated. Any quarrels and bickerings between the deceased and his wife before the defendant knew the wife of the deceased would be wholly immaterial. We hold, therefore, that this assignment of error is without merit.

It is next urged that the court erred in refusing the defendant's request to introduce the whole of the evidence given by the witness George B. Pope at the preliminary examination, for the purpose of impeaching his testimony given at the trial. The trial court refused this request upon the ground that before any part of the testimony taken at the preliminary examination would be admissible the attention of the witness must have first been called to the particular matter upon which he was sought to be impeached. The reasons given by the trial court were correct; where a witness is sought to be impeached by showing that the testimony given at the final trial is in conflict with that given at the preliminary or some other trial, the attention of the witness must be called to the particular facts concerning which a discrepancy is sought to be shown.

Finally, the defendant complains because the court permitted the state on rebuttal to show by several witnesses that the reputation of the deceased as being a peaceable law-abiding citizen was good, and claims that this testimony was incompetent and prejudicial. The defendant by his own testimony introduced evidence tending to show that the deceased was sullen and quarrelsome, and that when in such moods he was in the habit of whittling or playing with an open knife in his hand. To that extent the good character and peaceableness of the deceased was attacked by the defendant. It was therefore competent for the state to show, if it could, that the deceased was a peaceable, law-abiding citizen. Evidence of the good

characer of the deceased is permissible where evidence that he was of a turbulent or quarrelsome disposition is offered in support of defendant's claim of justification. State v. Truskett, 85 Kan. 804, 118 Pac. 1048; 13 R. C. L. 917, and cases cited.

Finding no prejudicial error in this record, the judgment of the trial court should be affirmed; and it is so ordered.

MATSON, P. J., and DOYLE, J., concur.