JOHN B. MILLER v. STATE.

No. A-9204.  Oct. 15, 1937.
(72 P. 2d 520.)

Howard K. Berry, O. A. Cargill, Jr., and W. R. Graalman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam. H. Lattimore, Asst. Atty. Gen., and Lewis Morris, Co. Atty., for the State.

BAREFOOT, J. The defendant was charged with the crime of murder in Oklahoma county, was tried, convicted, and sentenced to serve a term of life imprisonment in the penitentiary, and has appealed.

The first error assigned by the defendant is that the court erred in admitting incompetent and improper testimony, and the giving of certain instructions which dealt directly with the introduction of said incompetent and

improper evidence. This contention is based upon the fact that the state in presenting its case in chief introduced evidence of the good reputation and character of the deceased prior to the homicide, and that the defendant had at no time raised this issue, and that the court, in instructions Nos. 18½ and 19, instructed the jury with reference to this incompetent and improper testimony.

This question raises an issue which has been before the courts of this country in different forms many times. There is some conflict in the decisions, but the great weight of authority is to the effect that evidence as to the character and reputation of the deceased is not admissible, and the authorities are practically unanimous that the state is not permitted to introduce evidence of the good reputation and character of the deceased in presenting its case in chief, and prior to the time that defendant has raised this issue in any way.

In the case at bar, the state first put on the witness stand an interne in the hospital, and, second, a peace officer who was called immediately after the killing, and who testified as to the condition of the premises and the location of the bullet found thereon. The third witness offered by the state, in chief, was Dora Lawrence, who owned and operated the hotel and rooming house where the difficulty resulting in the death of Herman Frost occurred. She was questioned at length by the state, and during her direct examination, and prior to the introduction of any evidence by the defendant, she was asked:

"Q. Now, you have been acquainted with Herman Frost how long? A. Myself, 12 or 15 years. Mr. Lawrence longer. Q. What was his disposition as to being agreeable? A. Always agreeable. Q. Do you know his general reputation in the community where he resided during his lifetime for being a peaceable citiezn? A. Al-

ways. Mr. Berry: We object to that as incompetent, irrelevant and immaterial. It is not in issue in this case. The Court: Overruled. Mr. Berry: Exception. Q. (By Mr. Eberle) You will have to answer the question yes or no. I asked you, do you know his reputation? Just answer yes or no. A. Yes. Mr. Berry: We interpose the same objection. The Court: Overruled. Mr. Berry: Exception. Q. (By Mr. Eberle) Was that reputation of Herman Frost for being a peaceable citizen good or bad? A. Good."

A witness, whose name was E. L. Bond, was placed upon the witness stand on rebuttal by the state, and was asked:

"Q. (By Mr. Morris) What was Herman's reputation? A. Good. Mr. Berry: That is objected to as being incompetent, irrelevant and immaterial and not in issue in this case. Mr. Morris: If the court please, I understood him to say in his opening statement that he was going to prove that. Mr. Berry: If I did, I didn't intend to. Mr. Morris: All right, I understood you to say that. I will withdraw the question and that is all."

A witness, C. L. Godshell, was called by the defense on surrebuttal, and on cross-examination by the state the following evidence was given:

"Q. Were you acquainted with Herman Frost's general reputation prior to the time of this killing as to being a peaceable citzen? A. I have known Frost * * * Mr. Berry: We object to that as being * * * Q. (By Mr. Morris) A peaceable, law-abiding citizen? The Court: Answer that yes or no. The Witness: Well, yes; he had a good name. Q. (By Mr. Morris) Was it good or bad? A. Well, so far as I know, I never heard anything against him. Q. Well, would you say it was good or bad? A. Well, I would say his reputation, so far as I know, was good. Q. How was it as to being a peaceable citizen? A. I don't think the man would cause any trouble to anybody. I never knew of him causing any trouble to anybody."

The court instructed the jury as to the effect of the above testimony as follows:

"18½. You are instructed that evidence admitted as to the previous good reputation of the deceased as a peaceable, law-abiding citizen is to be considered by you in connection with all other evidence only for the purpose of ascertaining the state of mind of the respective parties at the time of the homicide, and for the purpose of ascertaining which one of the parties probably began the difficulty, and whether the defendant reasonably and in good faith believed that he was in danger of losing his life or receiving great bodily injury at the time of the final difficulty in which the deceased was killed.

"Excepted to by Defendant — Exception allowed. Clarence Mills, Judge.

"19. Certain evidence has been introduced before you for the purpose of showing the reputation of the deceased as a quarrelsome dangerous man. You should consider this evidence in connection with the other evidence in the case, and if you believe that the deceased had the reputation of being a quarrelsome, dangerous man, you may consider that fact in connection with the other evidence in ascertaining whether or not the deceased was the aggressor and brought on the difficulty, and if you believe that he had such reputation and that it was known to the defendant, you may consider that fact in connection with all the other evidence in the case in ascertaining whether or not the defendant reasonably and in good faith believed that he was in danger of losing his life or of receiving great bodily injury at the hands of the defendant.

"Excepted to by Defendant—Exception allowed. Clarence Mills, Judge."

The state in its brief filed in this case says:

"We concede the general rule in Oklahoma to be, as stated by this court in Coulson v. State, 48 Okla. Cr. 206, 291 Pac. 152, 153, that in the absence of an attack by the defendant testimony as to the good reputation of the de-

ceased as a peaceable and law-abiding citizen is incompetent. However, there are reasons, aside from any question as to the failure of defendant to properly protect his objection to such testimony, why the admission of such testimony in this case does not constitute error."

It is first contended by the state:

"It thus appears that for the second time testimony as to the good reputation of the deceased was admitted without objection, and the defendant is therefore in no position to complain."

If it be admitted that there was no objection and exception to the offering of this testimony on the last two occasions, yet it cannot be doubted that it was objected and excepted to when it was offered by the state in presenting its case in chief. The third time that proof was made counsel for the defendant objected but did not get to finish his objection until the county attorney said, "A peaceable, law-abiding citizen," and the court immediately said: "Answer that yes or no." The court having directed the witness to answer the question, the counsel did not get to make objection, but should have saved an exception. However, from what has been above said, it seems to us that the record was properly saved if the evidence was incompetent and improper.

The state further contends that while the defendant introduced no direct testimony as to the general reputation of the deceased, he did attack such reputation in a different way by seeking to establish a previous turbulent, violent and threatening conduct, attitude, and language of the deceased. It is a sufficient answer to this argument to say that when this evidence was offered by the state the defendant had placed no one upon the stand. It was the first witness for the state who was acquainted with the facts surrounding the difficulty from whom this

evidence was obtained on direct examination by the state. There are some authorities which hold that there is an exception to the general rule that where the defendant has offered evidence showing the turbulent, violent, and threatening conduct of the deceased, that on rebuttal the state may show the good reputation and character of the deceased, but this is not the rule according to the overwhelming weight of authority where the evidence is offered by the state before the defendant has offered any testimony to show the facts as above stated. Some cases hold that where the issue of self-defense is made, the state on rebuttal in a homicide case is permitted to introduce proof of the good reputation and character of the deceased. In the Coulson Case, above referred to, this court has passed upon this identical question. This decision was announced in August, 1930, and the present case was tried in 1936. We quote from that case as follows:

"The principal complaint made is that the court admitted incompetent evidence which prevented defendant from having a fair trial. This contention is directed to evidence introduced by the state of the good character of deceased as a peaceable and law-abiding citizen. The defendant made no attack at any time against the character of deceased. The issue is thus squarely presented whether or not in a homicide case, where the plea is self-defense, the state may offer evidence of the good character of deceased where his character has not been attacked by defendant. This precise question seems never to have been considered by this court. Where a defendant introduces evidence tending to show the turbulent, violent, and quarrelsome character of the deceased, it is, of course, competent for the state in rebuttal to show good character in these particulars. However, it is held that, where evidence of bad character is elicited on cross-examination from a witness for defendant this does not justify evidence by the state of good character. Barrett v. State, 86 Tex. Cr. R. 101, 215 S. W. 858. There is some division in the

authorities upon the question here presented. A few cases hold that in a homicide case, where the plea is self-defense, and there is evidence in support showing an unprovoked attack by deceased, this authorizes evidence by the state that the character and reputation of deceased was that of a peaceable and quiet citizen, although defendant has not attacked his general character in this respect. 30 C. J. 233, note 45. The leading case supporting this view is Thrawley v. State, 153 Ind. 375, 55 N. E. 95, 97, where it is said: "* * * On behalf of appellant no reputation witnesses were produced to show that the character of deceased for peaceableness was bad. Appellant did not testify, but his defense was that he killed deceased in a hand-to-hand encounter, in the proper defense of his person from an apparently felonious assault by deceased. On rebuttal the state proved the good reputation of deceased for peaceableness. * * * But the evidence of the state in support of the charge against appellant was such an attack upon his character for peace as to authorize him to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without the state's consent. So the evidence of appellant in support of the charge against deceased was such an attack upon his character for peace as to authorize the state to introduce his good character as a substantive fact, involved in the transaction, in disproof of the charge, without appellant's consent. * * *'

"This case was severely criticized in Carr v. State, 21 Ohio Cir. Ct. R. 43, and Kelly v. People, 229 Ill. 81, 82 N. E. 198, 200, 12 L. R. A. (N. S.) 1169, 11 Ann. Cas. 226 in which latter case it was said:

" 'The Supreme Court of Indiana, in Thrawley v. State, 153 Ind. 375, 55 N. E. 95, has determined this question the other way, holding that the reputation of the deceased for peaceableness is admissible as original evidence against one charged with murder where self-defense is relied upon. That decision does not appear to be supported by any authority, and we are not impressed with the reasoning upon which the conclusion rests. In Carr

v. State, 21 Ohio Cir. Ct. R. 43, in commenting on this case, it is said that the Supreme Court of Indiana is alone in holding such evidence competent. Our own investigation will not justify us in a statement so broad, and we therefore prefer to limit our observation to this: that it appears to us that the decision in Indiana is opposed to the great weight of authority on this question.' "

The Thrawley Case is further criticized in the case of De Woody v. State, 21 Ariz. 613, 193 Pac. 299, 301, where the court says:

"The holding of the Indiana Supreme Court in Thrawley v. State, 153 Ind. 375, 55 N. E. 95, and several other cases decided by that court and cited by counsel for the state, that in murder cases, where the defendant pleads self-defense and introduces evidence for the purpose of showing an apparently felonious assault upon him by the deceased at the time of the homicide, the state may, in rebuttal, prove the good character or reputation of the deceased for peace and quietness, is not the prevailing rule upheld by the great weight of authority. The Supreme Court of Illinois, in Kelly v. People, supra, commenting on the Thrawley decision, said:

" 'That decision does not appear to be supported by any authority, and we are not impressed with the reasoning upon which the conclusion rests.'

"We cannot presume that the evidence of the good character of the deceased had no influence on the deliberations of the jury (17 Corpus Juris, 275), and we are satisfied that the admission of such evidence over the objection of the defendant was reversible error."

In the case of State v. Potter, 13 Kan. 414, in an opinion by Judge Brewer, who afterwards became a distinguished justice of the Supreme Court of the United States, the court said:

"On the trial and before closing their case the prosecution was permitted over objection to ask witnesses who

had testified that they knew the deceased, this question: 'State if you knew his general reputation for being a peaceable, quiet and law-abiding citizen.' And the witnesses testified that he was a peaceable, quiet and law-abiding man. No attack was made by defendant at any time during the trial on the character of the deceased, and no attempt to show that he was a quarrelsome or turbulent man. The question then is fairly presented, whether the prosecution on a trial for murder may, in the first instance, and as a part of their case, show the character and reputation of the deceased. We do not understand counsel for the state as claiming that such testimony is admissible in all cases, but only in cases where there is a doubt as to whether the killing was done in self-defense, and where such testimony may serve to explain the conduct of the deceased and is therefore fairly a part of the res gestæ. In such cases it is said that the authorities hold that the defendant may show the bad character and reputation of the deceased as a turbulent, quarrelsome man. See, among other authorities, Franklin v. State, 29 Ala. 14; State v. Keene, 50 Mo. 357; Wise v. State, 2 Kan. [419], 429, [85 Am. Dec. 595]; People v. Murray, 10 Cal. 309. And if the defendant may show that the deceased was a known quarrelsome, dangerous man, why may not the state show that he was a known peaceable, quiet citizen? The argument is not good. The books are full of parallel cases. The accused may in some cases show his own good character. The state can never in the first instance show his bad character. A party can never offer evidence to support a witness' credibility until it is attacked. The reasons for these rules are obvious. Such testimony tends to distract the minds of the jury from the principal question, and should only be admitted when absolutely essential to the discovery of the truth. Again, the law presumes that a witness is honest, that a defendant has a good character, and that a party killed was a quiet and peaceable citizen, except so far as the contrary appears from the testimony in the case; and this presumption renders it unnecessary to offer any evidence in support thereof. No authorities have been cited sustaining

the admission of such testimony, and the following are in point against it: Ben v. State, 37 Ala. 103; Case v. State, 46 Miss. [683], 707; Pound v. State, 43 Ga. [88], 128."

This identical question was also upheld in the case of State v. Reed, 250 Mo. 379, 157 S. W. 316. We will not quote from this case, but it upholds the principle here announced.

It will also be noted that Judge Chappell, of this court, wrote a dissenting opinion in the Coulson Case. In this dissenting opinion he relies principally upon the Thrawley Case from Indiana, and the case of Fields v. State, 134 Ind. 46, 32 N. E. 780, upon which the opinion in the Thrawley Case is based. But in this dissenting opinion Judge Chappell says:

"There is no division of authorities upon the question that the state may not introduce evidence of the character of the deceased until the defendant puts the question in issue."

It will be noted in the case at bar the defendant testifying in his own behalf did not even claim that he shot the deceased in self-defense, but that the gun was accidentally discharged, and that he did not even realize that deceased had been shot. Certainly, under this statement, and under all the authorities, it could not be held that this evidence was admissible. The general rule as to the admissibility of evidence of this character is expressed in Wharton on Homicide, § 269, p. 438, where it is said:

"The good character of the deceased is not a subject of proof in a prosecution against another for killing him, where his character had not been attacked by the defense. And evidence showing the character and reputation of the deceased as a quiet and peaceable man cannot be given by the state in such a case in the first instance as a part of its case."

This rule is sustained by all the authorities. 13 R. C.

L. 916; Underhill on Criminal Evidence, § 324, p. 385; Michie on Homicide, vol. 1, p. 681; Nichols' Applied Evidence, vol. 4, p. 3192; Ben v. State, 37 Ala. 103; Pound v. State, 43 Ga. [88], 129; Graves v. State, 14 Tex. Cr. App. R. 113; Bays v. State, 50 Tex. Cr. R. 548, 99 S. W. 561; Gregory v. State, 50 Tex. Cr. R. 73, 94 S. W. 1041; Keith v. State, 50 Tex. Cr. R. 63, 94 S. W. 1044; Bloomer v. State, 75 Ark. 297, 87 S. W. 438; Parker v. Commonwealth, 96 Ky. 212, 28 S. W. 500; State v. McCarthy, 43 La. Ann. 541, 9 So. 493, 494; People v. Bezy, 67 Cal. 223, 7 Pac. 643; People v. Hoffman, 195 Cal. 295, 232 Pac. 974. In the McCarthy Case, supra, the court says:

"The character of the deceased. No authority has been cited (and after most diligent search we have not found one) in support of the admission in chief for the state of testimony to show the character and reputation of the deceased. The proposition excluding the testimony comes to us sustained in every instance by unanimous courts. 'When not assailed by the prisoner, the character of the deceased is not admissible, although he pleads self-defense, and attempts to establish it.' Pound v. State, 43 Ga. [88], 89, Ben v. State, 37 Ala. 103; State v. Potter, 13 Kan. [414], 424. In the case just cited, Judge Brewer, at the time Justice of the Kansas Supreme Court, now of the United States Supreme Court, was the organ of the court. Dock v. Com., 21 Grat. [Va.] 909; People v. Anderson, 39 Cal. 703; State v. Bass, 11 La. Ann. 478. We have examined every decision referred to by the authors hereafter mentioned, and have not found anything in support of the proposition. In every case the verdict was annulled. 2 Bish. Crim. Proc., § 612; 3 Greenl. Ev., § 27; Whart. Crim. Ev., § 83; Whart. Hom., § 625; Best. Ev. § 257. We are constrained to the conclusion that the case must be remanded. We cannot presume that the evidence had no influence on the deliberation of the jury. Whart. Crim. Ev. 68."

An exception to the general rule that evidence of the

general reputation and character of the deceased is not permitted, is that it does not apply in cases where self-defense is relied upon, and this exception is upheld in a few cases; but the great weight of authority is that this defense alone does not change the general rule. Certain cases hold that where the defense offers evidence to show that deceased was a quarrelsome, turbulent, or violent and dangerous man, the state may on rebuttal introduce evidence that the deceased was a peaceful, quiet, and law-abiding man; that this is in fact an attack upon his character, and the state on rebuttal has the right to prove the good character and reputation of the deceased. These authorities hold that no general rule can be laid down for the determination of what shall be held to constitute an attack by the defendant on the character of the deceased, so as to open the door for rebuttal on behalf of the state, but each case must be decided on its own circumstances and facts. The case of De Woody v. State, supra, illustrates this point, and in a case very similar to the one at bar the court held that the evidence was not of such character as to bring it under the exception to the general rule.

We have examined the authorities cited by the state. All of them uphold the general rule as announced in this decision. They uphold the minority rule heretofore announced, and generally base their decisions upon the Thrawley Case, supra, and which has not generally been followed by the courts of this country. Some of these decisions follow the exception to the general rule which permits evidence upon rebuttal to be offered by the state where the defense has shown that the deceased was a quarrelsome, turbulent, or violent and dangerous man, but not in a single case cited was the evidence offered in chief by the state, as shown by the facts in the instant

case. This is illustrated by reading the text in Nichols on Applied Evidence, vol. 4, p. 3192, where the rule is announced:

"Sec. 101. The state cannot, as a part of its primary case, offer evidence concerning decedent's reputation as a peaceable and quiet person."

"Sec. 102. Evidence on behalf of prosecution as to reputation of deceased for peace and quiet when it has been assailed by accused is not admissible, though defendant pleads self-defense, and attempts to establish it. However, there is authority apparently to the contrary."

Then in section 103, it is said:

"The reputation of deceased as a man of peaceable character is competent on behalf of the prosecution after such character has been attacked and put in evidence by defense. It is not necessary that the character of deceased be directly attacked by defendant by evidence as to his general reputation to render admissible on behalf of the state evidence to his good character. 'No general rule can be laid down for the determination of what will be held to constitute an attack by the defendant on the reputation of the deceased so as to "open the door" for rebuttal on behalf of the prosecution. Each case must be decided according to its own facts.' "

The cases cited by the state are cited as exceptions to the general rule as above stated under the last section quoted, and as shown do not apply to the facts in the instant case. The cases relied upon by the state are Cody v .State, 23 Okla. Cr. 236, 214 Pac. 201; State v. Todd, 28 N. M. 518, 214 Pac. 899; Pettis v. State, 47 Tex. Cr. R. 66, 81 S. W. 312; Burnett v. State, 34 Ariz. 129, 268 Pac. 611; Greenwood v. State, 51 Okla. Cr. 74, 299 Pac. 248.

From an examination of the authorities, hardly a case can be found in which a judgment and sentence has been permitted to stand where the state as a part of its evidence

in chief has proven the good character and reputation of the deceased, and this without the issue being raised by the defendant, as in the instant case. A careful examination of the facts here show the defense at no time raised this issue. The proof of the defendant and his family only showed that the deceased had been drinking and swearing in his own room, which adjoined defendant's room, and that he made threats against the defendant. This and other facts proven do not, in our opinion, constitute such an attack upon the character of the deceased as to permit the state to offer evidence of his good reputation and character, and especially in its case in chief, as was permitted over the objection of the defendant in the instant case.

The argument that this judgment should be upheld under the harmless error doctrine does not appeal to us from the facts in this case. We cannot presume that the evidence of the good character of the deceased had no influence upon the verdict rendered by the jury, and this is especially true considering the instructions given by the court with reference to this evidence. The defendant in this case was given a life sentence.

For the reasons above stated, it becomes unnecessary for us to pass upon other errors assigned as they will not appear upon a retrial thereof.

The judgment of the district court of Oklahoma county is reversed. If the defendant is in the penitentiary, the warden is directed to deliver him to the custody of the sheriff of Oklahoma county to await further proceedings of the district court of that county.

DAVENPORT, P. J., and DOYLE J., concur.