## W. A. (BILL) EVANS v. STATE.

No. A-10966.    May 11, 1949.

(206 P. 2d 247; 214 P. 2d 970.)

Meacham, Meacham, Meacham & Meacham, of Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, P. J.  The defendant, W. A. (Bill) Evans, was charged in the district court of Custer county with the crime of manslaughter in the first degree, was tried,

convicted of manslaughter in the second degree, and pursuant to the verdict of the jury was sentenced to serve three years' imprisonment in the State Penitentiary.

Three assignments of error are presented in the brief of defendant for reversal of the judgment of conviction: First, the trial court erred in admitting irrelevant and highly prejudicial testimony over objections of defendant; second, the evidence is insufficient to support the verdict and judgment and sentence; third, the court erred in instructing the jury.

The defendant was chief of police of the city of Weatherford and had been such chief of police for about four years when he shot and killed the deceased, Alfred McAllister, on September 1, 1945.

The deceased was a young man; his wife lived at Luther in Oklahoma county, but the deceased was an enlisted man in the Army Air Corps, stationed at Frederick, Okla.

On the day of the fatal difficulty, the deceased came to Clinton where he met his brother-in-law, Bill Loman. Together with Loman and one Jack Duncum, the deceased went to a rodeo at Elk City. During the day, the deceased and his companions consumed some whisky. The evidence is disputed as to whether or not at the time of the homicide the deceased was under the influence of intoxicating liquor. After the rodeo had ended, the deceased, together with Loman and Duncum, started to Oklahoma City with the deceased driving the automobile. Near the town of Bridgeport, the automobile ran off the road, wrecking the car and causing serious injuries to Loman and Duncum, and minor injuries to the deceased. Loman's back and shoulder were broken and he suffered internal injuries. Duncum was knocked unconscious and did not

regain his consciousness for several hours. The deceased sustained a cut on the wrist and minor bruises to his head. After the wreck had occurred, L. P. Brown from Oklahoma City came along in a truck and brought the three men to Weatherford. The hospital at Weatherford refused to admit them for treatment, so Mr. Brown drove his truck into the main street of the city of Weatherford and parked it near the city hall.

The deceased went into several stores and talked to many different people asking for someone to take the injured to an Oklahoma City hospital and repeatedly stated that he would give $95 to anyone who would haul them to Oklahoma City. During the time that he was asking assistance to be taken to Oklahoma City, he would go back and forth to the truck where Loman and Duncum were lying.

On the last of these occasions, the deceased had returned and was standing behind the truck. The defendant as chief of police of Weatherford had been notified that there was a disturbance going on near the truck where a crowd had gathered listening to the complaints of the deceased. The deceased appeared to be berating the crowd and cursing some of them for his failure to secure any assistance in the city of Weatherford.

The evidence is contradictory as to what was said by the defendant to the deceased when the defendant approached the truck where the deceased was standing. The witnesses for the state testified that the defendant said in substance to the deceased "come go with me," and grabbed deceased's shoulder; that deceased jerked loose from defendant and said "I am going to stay here and get some help for my friends who are hurt." When deceased refused to go with defendant, the defendant call-

ed several men who were in the crowd to help him take deceased to jail, but when they attempted to move deceased, he hung on to the truck and refused to go. It is agreed that at that point defendant took a gun from the holster of Sam Taylor, constable, and struck the deceased with it on the head two or three times. After the deceased was hit with the pistol, he wrestled with the defendant and it was during this difficulty that defendant fired the pistol which he had taken from the constable into the right side of the neck of deceased. The bullet lodged near the left hip. The deceased died within a few minutes.

It was the contention of the state that the defendant evidently became enraged at the deceased or temporarily upset over the resistance being offered by the deceased and fired the shot which took the life of deceased. The theory of the defense was that the defendant was attempting to arrest deceased for being drunk or disturbing the peace, that he had no intention of shooting the deceased, but that the deceased grabbed the barrel of the pistol which defendant held in his hand and in the scuffle the pistol was accidentally discharged. Some of the state's witnesses testified that when the deceased sought to grapple with the defendant, the defendant stepped back five or six feet and fired the pistol into his neck. The pistol which was used was a single action revolver which required that the hammer be pulled back to firing position before it could be discharged by a pull on the trigger. There was no testimony by the physicians who examined the deceased or by the undertaker who prepared the body for burial as to any powder burns on the body of deceased and the absence of these powder burns tends to substantiate the theory of the state that the defendant stepped back a few feet and fired the shot into the body

of deceased after the deceased had resisted the efforts of defendant to take him to jail.

The first assignment of error is directed at the testimony of his brother-in-law, Bill Loman, the wife of the deceased, and the father of the deceased, concerning whether the deceased was married; that deceased was enlisted in the Army; that he was on his way to Oklahoma City to attend a family reunion; that the father was a farmer; that deceased had been in an airplane wreck while in the Army and that he was very nervous subsequent to that wreck.

It must be borne in mind that counsel for defendant made his opening statement at the beginning of the case and did not reserve the making of his statement until after the state had closed its case in chief. For that reason, the issues were before the jury including the theory of the defense and any evidence which would go to any of the substantial matters in dispute or which had a legitimate influence or bearing on the case was properly admissible. One of these issues was whether the defendant was drunk. The trial court sustained many objections interposed by counsel for defendant to certain of the questions asked the relatives of the defendant. Among these questions, to which objections were sustained, were questions as to whether deceased had any children, whether he and his wife attended high school together, the length of time deceased served in the army, whether deceased was able to sleep at night, and whether he was a member of any chucrh. At one point in the interrogation by counsel for the state the court stated, "I would not go into that too far."

We agree with counsel for defendant that some of these matters were immaterial, but we cannot agree that they tended to prejudice the jury against the defendant.

Counsel for defendant contend that this testimony of the relatives of the deceased constituted evidence showing the character or reputation of deceased as being a quiet, peaceable and law-abiding citizen, and that such evidence was not admissible on the part of the state in the absence of an attack on the character of deceased by the defendant.

It seems to be settled law in this state that evidence showing character and reputation of the deceased as a quiet and peaceable man cannot be given by the state in the first instance as a part of the state's case in chief where such character is not attacked. Miller v. State, 63 Okla. Cr. 64, 72 P. 2d 520; Coulson v. State, 48 Okla. Cr. 206, 291 P. 152. However, the evidence complained of was not in our opinion offered to prove the good reputation of the deceased as a peaceable and law-abiding citizen and was not construed by the trial court as such.

The next two assignments of error will be considered together. The law in Oklahoma as to the right of an officer to shoot a person resisting arrest for a misdemeanor is stated in Graham et al. v. State, 31 Okla. Cr. 125, 237 P. 462, as follows:

"A peace officer has no lawful right to shoot, or shoot at, a person who is attempting to escape arrest for a misdemeanor, unless the offender resists to such an extent as to place the officer in danger of loss of life or great bodily harm."

In Sharp v. United States, 6 Okla. Cr. 350, 118 P. 675, it is held:

"A peace officer in attempting to arrest a person for an offense less than a felony cannot shoot or kill, unless the offender resists to such an extent as to place the officer in danger of loss of life or great bodily harm."

See, also, Whitford v. State, 35 Okla. Cr. 22, 247 P. 424.

In Vaughn v. State, 54 Okla. Cr. 59, 14 P. 2d 239, this court held:

"Where a peace officer attempts to arrest a person for a petit offense and such person flees, such officer has no lawful right to shoot and kill such person, and, if he does so, he will be guilty of murder or manslaughter as the case may be."

Warren on Homicide, volume I, section 145, sets forth the rule that an officer making an arrest for misdemeanor cannot take life unless the offender resists to such an extent as to place the officer in danger of loss of life or great bodily harm, which is the rule in Oklahoma, as shown by the above cases.

Under the evidence of the state as shown in the brief synopsis heretofore quoted, the killing of the deceased was unjustified. The testimony of defendant was contradictory to the evidence of the state, and his statement that the shooting was accidental raised a question for determination by the jury. The jury was justified in concluding from the evidence that the defendant fired the shot which took the life of deceased and that such force was unnecessary in view of the fact that the deceased was unarmed and was not attempting serious bodily harm to the defendant.

The most serious question with which we are concerned concerns the matter of the instructions to the jury. We have considered each of these instructions.

Among the instructions the court advised the jury as follows:

"4B. You are instructed that a peace officer may, without a warrant, arrest a person for misdemeanor, committed or attempted in his presence.

"A peace officer has no authority to arrest a person without a warrant, for misdemeanor, unless committed or attempted in his presence.

"You are instructed that when arresting a person without a warrant, the officer must inform the person sought to be arrested of his authority and the cause of the arrest except when the person is in the actual commission of a public offense.

"It is a misdemeanor to be intoxicated in a public place. The public streets in the city of Weatherford, Oklahoma, in and near the business district of said city, is a public place.

"If a peace officer is attempting to make a lawful arrest in a lawful manner and the person sought to be arrested resists, the offficer has a legal right to use all force reasonably necessary to effect his arrest.

"One may resist an illegal arrest, but he may not kill the one attempting to make the arrest, unless there exists, or appears to exist, circumstances exciting the fear of a reasonable man that he is about to be injured, or that his life is in danger of being destroyed.

"6. You are instructed that homicide is excusable when committed by accident and misfortune in doing any lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent, or when committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation and is not done in a cruel or unusual manner.

"7. You are instructed that homicide is justifiable when committed by public officers when necessarily com-

mitted in over-coming actual resistance to the officers to the discharge of any legal duty.

"You are further instructed that homicide is also justifiable when committed by any person in either of the following cases:

"1. When resisting any attempt to murder such person, or to commit any felony upon him; or,

"2. When committed in the lawful defense of such person, when there is a reasonable ground to apprehend a design to commit a felony, or to do him some great personal injury, and imminent danger of such design being accomplished; or,

"3. In lawfully keeping and preserving the peace."

"10. You are instructed that a peace officer in attempting to arrest a person for an offense less than a felony cannot shoot or kill, unless the offender resists to such an extent as to place the officer in danger of loss of life or great bodily harm."

"14. You are instructed that if you find and believe from the evidence in this case that the defendant at the time of the injury of the deceased was in the performance of his duty seeking to preserve and keep the peace and that it was necessary for the defendant in order to preserve and keep the peace to apprehend and arrest the deceased and that the deceased resisted arrest and that the defendant did not use more force than was necessary in order to effect such arrest, then you will find the defendant not guilty."

In addition to these instructions, the court submitted the issue of self-defense in three other instructions. by counsel for defendant reads:
The instruction to which complaint is specifically made

"The law of self-defense, however, is emphatically a law of necessity. It does not imply the right of attack and cannot avail in any case where the difficulty is sought for or induced by the slayer, by any wilful act of his

own or where he voluntarily or of his own free will enters into it, no matter how hard he may be pressed or how great his danger may become during the progress of the difficulty, unless he, in good faith, abandons the contest and either by word or act makes that fact known to his adversary. If, however, the original aggressor does, in good faith, abandon the contest and does by word or act make that fact known to his adversary and if thereafter his adversary continues to combat, then such adversary himself becomes an aggressor and thereafter the original aggressor has the right of self-defense.

"A homicide is not justifiable on the ground of self-defense, however, unless it is actually or apparently necessary to save the life of the slayer or to prevent his receiving some great bodily injury at the hands of the deceased. The apprehension of no other danger will justify the resort to so extreme a measure as to the taking of human life."

Instruction No. 13 as an abstract proposition of law is substantially correct. However, the issue of self-defense on the part of an officer attempting to make an arrest of a person for committing an offense in his presence is not the same as that of an individual in combat with another individual. In view of the other instructions on self-defense and the instructions on the right of an officer to make an arrest which we have hereinabove quoted, we do not believe that this instruction complained of had the effect of misleading the jury. If the jury had believed that the shooting was accidental as testified to by the defendant, then under instruction No. 6, it would have been their duty to have acquitted defendant. If they had believed deceased was killed while resisting the officer in the lawful discharge of his duty, then instructions 4B, 7 and 14 would apply. Construing the instructions as a whole, we think they substantially presented the issues to the jury. The

jury did not find the defendant guilty of manslaughter in the first degree, as they could have been justified in doing under the evidence of the state. Instead, they found him guilty of manslaughter in the second degree, which in effect meant that the jury found that the defendant was guilty of culpable negligence in the killing of deceased. The two requested instructions presented on behalf of the defendant, in so far as they embodied correct statements of the law, are included in the instructions which were given. A part of said requested instructions was erroneous and the court properly refused to give the instructions in the form in which the request was made.

This case is comparable in many aspects to the recent cases of Feil v. State, 81 Okla. Cr. 133, 161 P. 2d 770, and Storer v. State, 84 Okla. Cr. 176, 180 P. 2d 202, in each of which cases officers shot and killed parties whom they were attempting to arrest. A person cannot read the record in this case with an unprejudiced mind without being impressed with the fact that the killing of the deceased was a regrettable and unnecessary act on the part of the defendant.

In Feil v. State, supra, in sustaining the conviction of the officer, this court held [81 Okla. Cr. 133, 161 P. 2d 771]:

"Where proof of defendant's guilt is clear, any technical defect in an instruction will not be grounds for reversal unless it can be shown to have prejudiced the defendant."

In Storer v. State, supra, we held that the killing of the deceased was without adequate provocation. We adopt part of the language used by the court in disposing of that case as applicable to the instant case [180 P. 2d 209]:

"All of the collateral elements of the case which are presented as grounds for reversal of the judgment of conviction were evidently taken into consideration by the jury in mitigation of the punishment as they only assessed the minimum punishment of four years' imprisonment in the State Penitentiary. No record is appealed to this Court that is perfect in every detail. It is sometimes easy to forget the living trial in the search for error in a dead record. The trial was conducted in substantial compliance with the law. Another trial judge might have handled the case differently in some details but if there are any irregularities of procedure, they were not such as deprive the defendant of any substantial rights."

The judgment and sentence of the district court of Custer county is affirmed.

BAREFOOT and BRETT, JJ., concur.

On Rehearing Feb. 8, 1950.

Meacham & Meacham, Clinton, Leon C. Phillips, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred E. La Rue, Co. Atty., Arapaho, for the State.

PER CURIAM. After hearing the argument of counsel on rehearing, and again fully considering the record and assignments of error, we have come to the conclusion that justice requires that the judgment and sentence of the district court of Custer county be modified to a term of one year imprisonment in the county jail, and a fine of $300.

The judgment and sentence as thus modified is affirmed.

Mandate will issue forthwith.