# KEPHART v. STATE.

No. A-11274.   March 14, 1951.

(229 P. 2d 224.)

Milton Keen, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Chester Kephart, was charged by an information filed in the county court of Custer county with unlawfully catching about 25 channel catfish out of the Washita River by means of a wire trap; was tried; convicted and given the minimum punishment of 30 days in the county jail and a fine of $100; and has appealed.

The first proposition presented by defendant is that the court erred in overruling the demurrer to the amended information. The amended information filed against the defendant, omitting formal parts, reads:

"At and within the said County and State did then and there commit the offense of Catching game fish by means of a trap in manner and form as follows, to-wit: That on or about the date aforesaid in the County and State aforesaid, the said Chester Kephart did unlawfully and willfully catch about twenty-five channel cat fish, ranging from eight inches in length to sixteen inches in length, out of the Washita River, at a place approximately one mile Southeast of Clinton, Oklahoma, by means and use of a wire trap placed in said Washita River," etc.

It is contended by the defendant that this prosecution was instituted under the provisions of Tit. 29, § 261, O.S. 1941, as amended in 1947, Laws 1947, p. 255, § 2. Under this provision of the statutes it was made a violation of the law to catch certain game fish therein named by means of "net trammel, net seine, gun trap, wire or pot, snare or gig" but the game fish therein named did not include channel cat and there was also due to the ambiguousness of the act some question as to whether the

provision of the act applied to any waters except those stocked by state hatchery fish.

However, the court correctly treated the prosecution as having been instituted under the provisions of 29 O.S. 1941 § 263, which provides:

"It shall be unlawful for any person or persons to take, catch or kill any game fish as defined in Section 14, of said Chapter 35 from any of the streams, creeks, lakes, ponds or waters of this State other than privately owned ponds or lakes by any means except with hook and line attached to a pole or rod, throw line or trot line; said trot line shall not contain more than One Hundred (100) hooks, providing that it shall be unlawful to fish with devices known as artificial devices containing more than fifteen (15) hooks, provided, however, that all fish not defined by Section 15 as game fish may be taken from the waters of this State by means of nets or seines of any kind, the meshes of same, however, not to be smaller than Two and One-half (2½) inches; and provided further, that no netting or seining shall be done unless there shall be present some game ranger, deputy game ranger, state, county, or municipal or township peace officer, and providing further, that such fish may be taken by the use of gigs or spears; such gigs or spears to have not more than three (3) points with not more than two (2) barbs on each point.

"Provided, that the State Game and Fish Commission shall have authority to designate, by proclamation, areas, lakes or streams, or parts of lakes or streams where it shall be unlawful to take, catch or kill non-game fish by the use of such gigs or spears during such time as may be designated by said Commission. As amended Laws 1943, p. 103, § 1; Laws 1949, p. 228, § 1."

Channel catfish are declared to be game fish under the provisions of 29 O.S. 1941 § 262.

Under the provisions of 29 O.S. 1941 § 263, supra, it was only necessary for the county attorney to allege

in his information that channel catfish were taken from a stream by some means other than with hook and line attached to a pole or rod, or throw line or trot line. All of these essential allegations were set forth in the information together with a statement of the location of the stream where the fish were caught by means of the wire trap.

In State v. Tyler, 82 Okla. Cr. 112, 166 P. 2d 1015, it is held:

"Under Tit. 29, O.S. 1941, § 262, a channel catfish is defined as a 'game fish', and one illegally taking or catching the same may be charged and prosecuted for a violation of the terms of Tit. 29, O.S. 1941 §§ 261 and 263.

"An information which informs the accused of the offense with which he stands charged with such particularity as to enable him to prepare for his trial, and so defines and identifies the offense that, if convicted or acquitted, the accused will be able to defend himself against any subsequent prosecution for the same offense, will be sustained as against a demurrer."

The defendant presented nine requested instructions to the trial court and they were each refused and the refusal to give these instructions is assigned as error:

"Defendant's requested instructions:

"1. Gentlemen of the Jury, you are instructed to acquit the defendant, Chester Kephart, and to herein return a verdict of 'not guilty'.

"2. You are instructed that it is lawful for any person to use an ordinary minnow trap or minnow seine not more than ten feet in length, for the purpose of catching small non-game minnows for bait.

"3. You are instructed that it is lawful to use an ordinary minnow trap or minnow seine not more than forty feet in length, for the purpose of catching small non-game minnows.

"4. You are instructed that it is lawful to take all fish not defined as game fish from any of the waters of this State by means of nets or seines or traps of any kind, except during the months of April and May, provided that there is present some game ranger, deputy game ranger, state, county, or municipal or township peace officer.

"5. You are instructed that it is lawful to fish, catch fish, or attempt to catch fish with any net trammel, net seine, gun or trap of any kind, or a net wire or pot, in the Washita River, except as to the following specifically named game fish, to-wit: black bass, small mouth bass, large mouth bass, strawberry or calico bass, rock bass, otherwise known as goggle eye bass, crappie, white perch, yellow perch, rainbow or brook trout.

"6. You are instructed that before you can convict the defendant herein, the State must first prove beyond a reasonable doubt, all of the following:

"(a) that the device which has been admitted to evidence herein is a wire trap;

"(b) that the defendant, Chester Kephart, set said devise in the waters of the Washita river at a point approximately one mile southeast of Clinton, in Custer County, Oklahoma;

"(c) that said Washita River, at the point or place approximately one mile southeast of Clinton, is a river which has been and is stocked by state hatchery fish;

"(d) that said devise, as set by the defendant Chester Kephart (and not as set, changed or moved by any other person) directly caught certain prohibited game fish, as hereinafter specifically named;

"(e) that any fish known as black bass, small mouth bass, large mouth bass, strawberry or calico bass, rock bass, otherwise known as goggle eye bass, crappie, white perch, yellow perch, rainbow or brook trout were thereby caught by said defendant in said devise in said river;

456

"(f) and that the defendant, Chester Kephart, intended thereby to catch any of said specifically named fish; and unless you find and believe beyond a reasonable doubt each and all of the foregoing, it is your duty to acquit the defendant and you shall return a verdict of 'Not Guilty'.

"7. You are instructed that there is no duty (nor burden) on the part of the defendant to prove, nor to disprove, any fact whatsoever, but that the duty and burden is upon the State to prove each, every and all the material facts beyond a reasonable doubt; and if the State fails to prove any one or more of the material facts beyond a reasonable doubt, it is your duty to acquit the defendant and you shall return a verdict of 'Not Guilty'.

"8. You are instructed, that even though you find and believe from the evidence that the defendant was 'robbing' said devise of the fish therein, that unless you also find and believe from the evidence, beyond a reasonable doubt, that the defendant had previously set and placed said devise thereby intending to catch certain of the prohibited game fish, as above defined, it is your duty to acquit the defendant and to return a verdict of 'Not Guilty'.

"9. You are instructed that a person lawfully using a trap for the purpose of catching minnows, or lawfully using a trap for the purpose of catching non-game fish, may inadvertently catch certain of the prohibited game fish therein; but, if such person releases said prohibited game fish so caught, or if he intends to release said prohibited game fish, then no law has been violated."

It is apparent from the reading of these requested instructions that they were prepared on the theory that the prosecution was based on the alleged violation of the provisions of 29 O.S. 1941 § 261, supra. Requested instructions Nos. 2, 3, and 4 were properly refused because they were wholly outside of the issues before the jury. Requested instruction No. 5 would have been a

proper instruction and should have been submitted if the prosecution had been under the statute contended for by defendant. But since the court treated the prosecution as being under an entirely different statute it properly rejected defendant's requested instruction No. 5. The requested instruction No. 6 has incorporated in it the same features as make requested instruction No. 5 inapplicable. Requested instruction No. 7 was substantially given by the court. In connection with the requested instructions Nos. 1, 8, and 9 it is necessary to review the evidence.

Rhomney Chaffin, the game ranger for Custer county, testified that in the latter part of September, 1948, while walking along the bank of the Washita River near the city of Clinton he discovered a wire trap sitting in the river; that he removed the trap and found that it contained several channel catfish. For the next three days he kept a close watch on the trap. On October 1st while the ranger was in hiding close to the river he saw the defendant walking along the river bank with a tow sack under his arm and with a wire. Defendant approached the wire trap and by means of the stiff wire that he was carrying lifted the trap from the water, unlaced one end of the trap, threw back some of the smaller fish and placed the remainder in a tow sack. The trap was then thrown back into the water and defendant started away when he was accosted by Chaffin, the game ranger. When the defendant saw the game ranger he turned and threw the sack containing the fish into the river. The ranger further testified that each day when he went to the river to maintain a watch he would remove the trap to see whether the fish were still in it and that he did so on the day that defendant came to the trap; that on that day there were approximately 25 channel cat in

the trap and that defendant took all of the fish out of the trap and placed most of them in the tow sack. The wire trap and the wire used by defendant in removing the trap from the Washita River were introduced in evidence. In describing the wire trap the ranger said it was a circular trap with a wire throat composed of chicken wire and laced at the other end. The trap was about eighteen inches in diameter and the outside was covered with hail screen which has a mesh of about a quarter of an inch.

Tom Deal testified for the state that on October 1, 1948, he was fishing with a rod and reel on the Washita River close to where defendant was arrested by the ranger; that shortly before the defendant was arrested he came by where the witness was fishing, that defendant had a tow sack in his hand and asked the witness whether he had seen anybody around and the witness told him no.

The defendant testified that on the day he was arrested he was on his way to pick up some bottles about half a mile east of where he was arrested; that as he walked around the left bank he saw the trap full of fish sitting in the water; that he saw Mr. Deal about 150 yards away and asked him whether he had seen anybody around and Mr. Deal said no; that he looked along the bank of the river and found an old gunny sack and some wire and decided to remove the trap and steal the fish that were in it; that he removed the trap, took out ten or twelve of the biggest fish and threw the little ones back into the river; that as he started to leave the river he saw the game ranger approaching and turned and threw the sack of fish into the river for the reason that he thought that the trap belonged to the ranger and the ranger would get him for attempting to steal the fish.

The evidence of the state showed a clear case of guilt on the part of the defendant of catching channel catfish by means of a wire trap, which was a violation of the statute prohibiting the taking of game fish by means other than hook and line. The testimony of defendant if believed by a jury would not constitute a defense under the statute for irrespective of whether he was stealing the fish or whether the trap belonged to him and had been set by him in the first instance, he did take the fish from the stream by means of a wire trap and reduced them to his possession and started away with them. His guilt was clearly established. Under the evidence the court acted properly in refusing requested instructions Nos. 1, 8, and 9 because they did not state the law applicable to the facts in this case.

The defendant excepted to the giving of the first seven instructions by the court. Complaint is especially made of instruction No. 3 which reads:

"You are instructed that it is unlawful and is a misdemeanor for any person to take, catch or kill any game fish from any stream of this State, except with hook and line attached to a pole or rod, throw line or trot line.

"You are further instructed that channel cat-fish are game fish.

"You are further instructed that the Washita River is a stream."

As hereinabove pointed out, since the prosecution was maintained under 29 O.S. 1941 § 263, this instruction was entirely proper. We have examined the instructions that were given and they appear to be a substantial statement of the law. They properly submitted the issues to the jury for their determination. The credibility of the witnesses and the weight and value to be given

to their testimony was exclusively in the province of the jury.

It is further contended that the trial court erred in sustaining an objection to a question asked by the attorney for the defendant of the prospective jurors on their voir dire examination. The question addressed to the jury was highly improper. In it counsel for the defendant continued with a presumption that the prosecution was under 29 O.S. 1941 § 261, supra, and based upon that contention he attempted to inquire of the jurors as to whether if the state failed to prove certain facts they would return a verdict of not guilty. The question was quite lengthy and at its conclusion the county attorney objected because of the improper nature of the question, and the objection was sustained.

Either party has the right to ask prospective jurors pertinent questions in order to determine whether he desires to exercise a peremptory challenge. In that connection the court should be liberal to give counsel a reasonable opportunity to discover the state of mind of the different jurors on any collateral matter reasonably liable to influence them in returning a verdict for or against either of the parties. However, the attorneys are not permitted to make statements of the law and seek to get a statement in advance of the trial as to how the jurors would decide the case on a given state of facts. In Jones v. State. 20 Okla. Cr. 154, 201 P. 664, this court held:

"In the examination of a venireman as to his qualifications to sit as a juror, neither party has the right to assume the facts of the case in detail, and assume that the court will instruct the jury in a particular way, and then call upon the prospective juror for a statement as to how he would decide under this supposed state of the evidence. This might be calling for a prejudgment of the

case, and the sustaining of an objection to such questions is not error.

"The manner and extent of examinations of jurors, touching their qualifications, cannot be prescribed by any definite, unyielding rule, but rests to a large extent in the sound discretion of the trial judge. In the examination, such latitude should be given the parties as will enable them to procure a jury free from outside influence, bias, or personal interest."

The judgment and sentence of the county court of Custer county is affirmed.

BRETT, P. J., and POWELL, J., concur.