**Lorinza FORD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–20.**

Court of Criminal Appeals of Oklahoma.

June 3, 1975.

Thomas W. Burns, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

OPINION

PER CURIAM:

Appellant, Lorinza Ford, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–849, for the offense of Murder in the Second Degree (21 O.S.1973 Supp. § 701.2). His punishment was fixed at an indeterminate term of from ten (10) years to Life imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At trial, Phillip Randle testified that on the 8th of April, 1974, he took Irvin Boyles and his girlfriend, Joyce Williams, to the apartment of Shirley Ware. He stated that when they pulled up in front of Ms. Ware's apartment, the defendant and another individual known as Willie came over to his car and wanted to borrow 35 cents. He stated that each individual in the car indicated that they had no money to lend. At that time the defendant got in the back seat with Boyles and Ms. Williams. After approximately 10 minutes he got out and told Boyles to get out of the car. The two then started fighting for no apparent reason. The fight lasted approximately 15 minutes at which time David Ware broke up the fight. The witness further testified that Ware took Boyles to his apartment and that Willie and he followed. He stated that the defendant left the scene, but he did not know where he went.

Phillip Randle further testified that David Ware, Ware's girlfriend, Irvin Boyles, Joyce Williams, John Benson, and himself were in the apartment. They had been talking for approximately five minutes when the defendant came through the door. He then stated that the defendant looked around and upon spotting Boyles he began to shoot. When the shooting commenced, Boyles attempted to get into the bedroom. The witness stated that Boyles had managed to get the door open, but at that time he was hit and he fell through

the open door. At this time the defendant walked over, looked down at Boyles, and started backing out of the apartment while pointing the gun at the occupants and telling them not to move. Randle testified that after the defendant had left he called the police and approximately 15 to 20 minutes later the police arrived at the scene. He stated that at no time during the day had he seen a weapon in the possession of Boyles and that no one in the room that day had a weapon.

David Jerome Ware testified that he lived at 2133 North Hartford in Tulsa, and on the 8th of April, 1974, he broke up a fight between the defendant and Irvin Boyles because it was not a fair fight. He stated that the defendant was intoxicated and Boyles was getting the best of him. He testified that after he broke up the fight he took Boyles to his apartment to watch television where John Benson, Odessa Smart, and Shirley Ware were waiting. He stated that he had heard no conversation that day between the defendant and Boyles, and he had seen no weapon. He indicated that after they had been in the apartment a few moments he saw the defendant come through the door and start firing a pistol. He stated that he fired the pistol three times at Boyles. He indicated that after the first shot Boyles slipped down in the chair in which he had been sitting, after the second shot he moved up toward the door, and at the third shot he had reached the bedroom door, got his hand on the doorknob but could not get it open when he was hit and fell through the doorway. He testified that he knew of no weapons in the apartment, and he had heard no conversation between the defendant and Boyles.

Don Perryman testified that he was a Tulsa Police Officer and was so employed on the 8th of April, 1974. He indicated that on that date he was called to 2133 North Hartford in Tulsa to answer a reported shooting call. He stated he found the deceased in the doorway between the bedroom and the living room and lying face up. He indicated that he found no weapon on the deceased and that at that time he took two witnesses to the police station for statements.

Fred L. Parke testified that he was a member of the Tulsa Police Department, employed in the Detective Division and he was so employed on the 8th of April 1974. He stated that on that date he went to 2133 North Hartford in Tulsa, and upon entering the apartment he discovered a body lying in the doorway leading from the living room to the bedroom. He stated that there was an entrance wound in the back of the head of Irvin Boyles who was lying on the floor. He indicated that there was also a bullet hole in a poster on the wall and another hole in the ceiling. He indicated that no weapons were found in the apartment. Detective Parke stated that Jerome Miller approached a member of the Patrol Division and stated that the defendant wanted to surrender. He indicated that Miller stated the defendant had given him the gun to take to the police officers, but he was afraid to approach the officers with the weapon so he placed it under a stairway in his apartment. He led the officers to the gun under the stairway and identified State's Exhibit No. 1 as the gun that Miller had given him. He indicated that that gun had three spent cartridges. He then went upstairs to Jerome Miller's apartment and encountered the defendant who was talking on the telephone. He stated there was no resistance, defendant was advised of his rights, and the defendant indicated that he had shot Irvin Boyles. The defendant was then taken to the police station.

Officer Parke testified that he encountered the defendant later that evening at the police station and again read him his rights, and at that time the defendant gave his statement. His statement basically was that the defendant and some of his family had been drinking earlier in the day, that he went to the store to buy wine for a girlfriend, and attempted to borrow 45 cents from Boyles. He indicated that Boyles

then jumped on him and a fight ensued in the parking lot. The defendant then, in his statement, indicated that Boyles had given him the impression that he was going to get a gun and finish the fight, and upon this impression he went to a friend's apartment and got a pistol and then proceeded to the apartment to shoot Boyles. Officer Parke testified that the defendant had stated that Boyles had told him, "I am going to let you up and we are going to go to it from here." (Tr. 57)

Dr. Leo Lowbeer testified that he had performed a complete autopsy on Boyles, and that the autopsy revealed a bullet in the right side of the brain. He stated that the entry was one inch behind the left ear and that the track of the bullet went from the left to the right. His conclusion was that the cause of death was a bullet wound to the head. He further testified that based upon his examination it was his conclusion that the bullet had come from the front rather than from the back, but more predominately from the side with an angle to the front.

The defendant testified that on the 8th of April, 1974, he and Willie Ward were in an apartment located at 2153 North Hartford. From this apartment he saw Boyles out in the street, and he went down and asked Phillip Randle for 45 cents. When Randle said that he did not have it he then asked Boyles who said that he also did not have it. He testified that he then got in the back seat and again asked Boyles for the money. Again Boyles stated that he did not have the money. He stated that at that time he punched Boyles' pocket and heard change. He stated this was then followed by some good-natured joking about. He then got out of the car and was laughing with Willie Ward about the girl Boyles had in the car. He stated he turned around and Boyles had gotten out of the car and hit him in the mouth. They fought for a few moments and then Boyles let him up saying, "Nigger, I have already whipped your ass, now I am going to let

you up and we will go for what it is worth." (Tr. 80) Defendant stated that this language means that one of the two is going to have to die to settle the argument in the language of the street. He then indicated that he felt that Boyles was going to get a gun when he headed toward Randles' automobile. He stated that at that time he started to go home but changed his mind because he felt there was going to be a gunfight and he should take any steps necessary to prevent one. He stated he went to Shirley Ware's apartment feeling that Boyles' friends could prevent Boyles from carrying the argument further. As he approached the apartment he heard music and laughter. He opened the door and at that time the apartment got quiet. He started to walk toward the couch but as he did so Boyles jumped out of the bedroom door. He stated that he felt Boyles was going to shoot, so he pulled his pistol, shot once and at that time he thought Boyles was going to charge him so he shut his eyes and fired twice. When he opened his eyes Boyles was lying on the floor. The defendant stated that when he left the apartment he went to another apartment and called his mother. He told Julius Miller to take the gun to the police and to tell them that he wanted to give himself up.

The defendant further testified that he had been in the police station about two hours when interviewed by Detective Parke. He indicated that defendant's exhibit No. 1, the statement given at police headquarters, was not the statement that he had given but it was the one that he had signed. He stated he was told that it was not going to be used against him, so it was proper to go ahead and sign it.

The defendant asserts that the trial court erred in allowing the prosecution to make improper statements during closing argument. The defendant cites two instances of alleged improper comment.

Defendant first complains of the State's call to the jury to consider the rights of

the victim in their deliberations. In this, the prosecution stated:

"MR. SLOAN: . . . I don't deny that he has all of his rights and you have to consider them, but I don't want you to forget the victim involved in this case.

"MR. BURNS: Excuse me, Mr. Sloan, I am sorry. I must object to this, this is improper argument, obviously appealing to the passion of the jury in violation of the Instructions given by the Court. I ask the jury be admonished.

"THE COURT: It will be overruled.

"MR. SLOAN: You can't forget Irvin Boyles, we don't have anybody to speak for him, I am going to ask that you do if anybody does consider him, remember him. How much was his life worth? I don't know. I wouldn't be able to offer you an evaluation. But I do know that life is the most precious thing we have, it's certainly the most precious thing that Irvin had, perhaps the only thing he had of any value." (Tr. 143–144)

■ In the instant case the evidence was such that it is not believed that a different result would be reached on a second trial. Although we do not condone the comments by the State, the only prejudice from these remarks would be to the sentence imposed by the jury. Defendant was tried and convicted under the provisions of 21 O.S.1973 Supp. § 701.2. Title 21 O.S. 1973 Supp. § 701.4 provides that upon conviction under § 701.2, the *trial court* must impose an indeterminate sentence. Therefore, the portion of the trial that could have been affected by the State's comments was not a matter for jury determination. Accordingly, we are of the opinion that error, if any, was harmless. Title 20 O.S.1971, § 3001. See, Riddle v. State, Okl. Cr., 374 P.2d 634 (1962).

Defendant next objects to the following statement:

"MR. SLOAN: . . . Counsel for the defense said the State's witnesses were biased. I would agree with that,

perhaps they do have a certain interest, at least the Ware boy and the Randle boy, it was their friend that was killed, I don't think it is an interest that would color their thinking any or what they would testify to, but—

"MR. BURNS: Now your Honor, I must object to that, they have been instructed that bias can color an opinion. That is not the law. I ask the jury be admonished.

"THE COURT: The jury will have the Instructions with them and they will follow the Instructions.

"MR. SLOAN: And I would take issue, ladies and gentlemen, with the fact that the police officers might have an interest, if they do it is very slight. Indeed they might be interested in the outcome of their work, but not enough that they would perjure themselves on the stand just to get a conviction." (Tr. 141–142)

■ In looking to the record we are of the opinion that the jury was not unduly prejudiced in their verdict by reason of the statements of the District Attorney.

In Valenti v. State, Okl.Cr., 392 P.2d 59 (1964), we quoted Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646 (1936) stating:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

See, Carr v. State, Okl.Cr., 514 P.2d 413 (1973), Pickens v. State, Okl.Cr., 450 P.2d 837 (1969).

The record indicates that the remarks by defense counsel had intimated that the testimony of Phillip Randle and David Ware was biased against the defendant due to

their friendship with the deceased. The defense counsel also inferred that the testimony of Police Officer Parke was biased because of his duty to collect evidence for purposes of prosecution. The statements complained of, when viewed in context, were invited by the comments of the defense counsel. In Neal v. State, Okl.Cr., 506 P.2d 936 (1973) we quoted Tilford v. State, Okl.Cr., 437 P.2d 261 (1967) stating:

"Generally, remarks of the prosecuting attorney, including such as might or would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to or retaliation for his acts or statements."

For the above reasons, we are of the opinion that the defendant had a trial free of any error which would justify modification or reversal.

Therefore, the judgment and sentence appealed from is hereby affirmed.