**Ozol SCOTT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–352.**

Court of Criminal Appeals of Oklahoma.

July 20, 1982.

---

**12.** 192 Okl. 251, 135 P.2d 332 (1943), appeal dismissed 320 U.S. 208, 63 S.Ct. 1448, 87 L.Ed.

Red Ivy, Chickasha, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

**BRETT, Presiding Judge:**

Ozol Scott appeals his conviction for Murder in the Second Degree, in the District Court of Grady County, Case No. CRF–79–98, in which he was sentenced to serve twenty-five (25) years' imprisonment.

On July 22, 1979, at about 8 a.m., Jay Lovelace visited the home of C. G. Scott, the appellant's father, to complain about the Scotts' dogs, which were "running" his cattle. The elder Scott told Lovelace, who was armed with a rifle, that the dogs belonged to his son, Omol Scott, the appellant's brother, and that arrangements had already been made to dispose of them. Lovelace left, but he returned later that afternoon. At that time, the appellant, who lived next door, went to his parents' home, armed with his .32 caliber revolver. According to the appellant, Lovelace struck him several times after they argued. The appellant then shot and killed Lovelace.

As his first assignment of error, the appellant alleges that the trial court unduly restricted his examination of a prospective juror during voir dire. Defense counsel asked the following questions without objection:

Q. Do you believe in the law of self-defense, that is that every person has a right to defend himself when he is assaulted and he is not the aggressor?

A. Yes.

Q. Will you closely follow the Court's Instructions on excusable or justifiable homicide?

A. Justifiable homicide and what was the other?

Q. Excusable.

A. Yes.

Q. They're first cousins to each other. Do you understand also that under the law when any person is assaulted he is not bound to retreat, but may stand his ground and repel the attack and protect his person from serious bodily injury when he is in a place where he has a right . to be?

A. Yes.

Q. We think the Court will instruct you that a homicide is justifiable when committed by a person when resisting an attempt to murder such person, or to commit any felony upon him in any dwelling house in which such person is, or when committed in the lawful defense of such person when there is reasonable grounds to apprehend a design to commit a felony upon him or do him great bodily injury, and when such person is in imminent danger of such design being accomplished, or when necessarily committed in attempting by lawful ways and means in lawfully suppressing any right, or in lawfully keeping or preserving the peace. If the Court gives you such an Instruction will you willingly follow this Instruction?

A. Yes, sir . . .

Defense counsel then attempted to elaborate on the self-defense issue by asking this additional question:

Will you in this case, if you are selected as a juror, in determining whether the defendant was in danger or apparent danger view the circumstances at the time from the defendant's standpoint as they reasonably appeared to him, or if the circumstances under which the killing occurred were sufficient to excite the fear of a reasonable person that his or her life was in danger, or that he was in danger of receiving great bodily injury at the deceased's hand, or apparently so, that the defendant acted under the influence of such fear at the time and, if you so find, that he would be justified in killing his assailant in self-defense, if the Court so instructs you?

The State objected, an in-camera hearing was held on the propriety of this question, and the trial court sustained the objection to the defense's question after finding that the objectionable question consisted of argument during voir dire on instructions which may be given to the jury at the close of the evidence.

This case falls within the rule set forth in *Kephart v. State*, 93 Okl.Cr. 451, 229 P.2d 224 (1951). After stating that the trial court should be liberal in giving counsel a reasonable opportunity to determine the state of mind of prospective jurors, the opinion continues with the following:

However the attorneys are not permitted to make statements of the law and seek to get a statement in advance of the trial as to how the jurors would decide the case on a given set of facts. (citations omitted)

\*    \*    \*    \*    \*    \*

In the examination of a venireman . . . neither party has the right to assume the facts of the case in detail, and assume that the court will instruct the jury in a particular way . . . *Kephart v. State*, supra, 229 P.2d at 229.

This Court finds that the excluded question was an attempt to argue the issue of self-defense to the jury and that the questions which preceded it sufficiently addressed that issue. Furthermore, the question was repetitious and confusing. The trial court's exclusion of the proferred question was a proper exercise of its discretion. See *Jones v. State*, 508 P.2d 280 (Okl.Cr. 1973).

■ As his second contention on appeal, the appellant argues that the trial court erroneously permitted testimony on rebuttal by the State regarding the peaceful character of the victim. We find that this evidence falls clearly within the meaning of the Evidence Code in view of the defense's position that the victim was the initial aggressor and that the homicide was an act of self-defense.

The Oklahoma Evidence Code provides the following:

A. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, *except*;

1. Evidence of a pertinent trait of his character offered by an accused or by the prosecution to rebut the same;

2. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or *evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;* ... (our emphasis) 12 O.S.1981, § 2404(A)

As the Evidence Subcommittee's Notes explain, this rule does not alter prior Oklahoma law, citing *Miller v. State*, 63 Okl.Cr. 64, 72 P.2d 520 (1937). The appellant relies on *Miller* for the general rule that the evidence of peacefulness of the victim is not admissible, but fails to distinguish *Miller*, where the defendant did not plead that he acted in self-defense. This proposition is without substance.

For the sake of clarity, the final propositions will be treated in reverse order. As his fourth proposition, the appellant contends that the trial court erroneously denied his demurrer to the evidence and motion for directed verdict.

To prove Murder in the Second Degree, the State must show that the death was "perpetrated by an act imminently dangerous to another person and evincing a depraved mind." 21 O.S.1981, § 701.8(1); *President v. State*, 602 P.2d 222 (Okl.Cr. 1979).

■ The appellant argues that the State's conflicting evidence is insufficient to establish guilt and, furthermore, that the jury's determination, in light of the self-defense argument, was not supported by the evidence. However, this Court's thorough examination of the evidence leads us to find that the trial court's rulings were correct.

■ In closing argument, the District Attorney made several statements to which the appellant now assigns error. We have carefully reviewed these portions of the transcript and will discuss only those statements which are improper. As is apparent from the portions quoted, *infra*, the defense attorney entered timely objections to the majority of these comments.

District Attorney Tony R. Burns made the following statement in closing:

[T]his is a Scott case, because you see the only witness that I had on the whole property was not a Scott but Mr. Jay Lovelace. And Mr. Jay Lovelace right now is six foot underground and I'm the nearest thing to Jay Lovelace there is in this world, because I'm in this courtroom speaking for him right now. Jay Lovelace is dead. My only witness is dead. And that's really what this case is all about.

MR. EMMONS: Objection, Your Honor.
THE COURT: What grounds?
MR. EMMONS: Your Honor, that's improper argument, referring to Jay Lovelace is his only witness and he's dead.
THE COURT: Sustained.

In so doing the prosecutor attempted to divert the jury's attention from the issues to be decided, to evoke sympathy for the deceased and to identify the prosecutor with the victim, thus aligning the jury's sympathies with the State.

Next, District Attorney Burns attempted to discredit the defense with the following:

MR. BURNS: The [sic] changed that testimony, ladies and gentlemen, because they didn't want him ... didn't want it showing you that this man was going to confront Mr. Lovelace. He went to get his gun—using deadly force—to confront Mr. Lovelace before he went down there. That's what they changed that testimony. Because, you know—and you can listen to that tape, if you don't—
MR. IVY: Your Honor, I object to the insinuation that "they" changed the testimony, the attorneys have nothing to do with the testimony. If the defendant changed his testimony well that's his— he's—Mr. Burns is trying to convey to

you that we sat over here and conjured up a story for this man and changed the testimony, that's not so and I object to it.

THE COURT: Sustained.

\* \* \* \* \* \*

Sympathy for the victim was sought by the prosecutor when he made the following appeal.

Poor Ozol Scott. How about Mr. Lovelace ... anybody got any sympathy for Mr. Lovelace?

MR. IVY: We're going to object to that type of argument, Your Honor.

THE COURT: Overruled.

The trial court erroneously ruled that this argument was fair contrary to the rule of *Ford v. State*, 536 P.2d 940 (Okl.Cr.1975), where this Court held that it was error for the trial court to overrule defense's objection to the prosecutor's admonition to consider the rights of the victim. In *Ford*, however, the error was harmless because the evidence of guilt was overwhelming and the sentence had been set by the judge not the jury. In the case before us, Ozol Scott's sentence of twenty-five (25) years was assessed by the jury who was subjected to the District Attorney's prejudicial statements.

Finally, the prosecutor assumed, for the jury's consideration, three different postures, each of which was designed to emotionally charge the jury with subjective reactions to the evidence, in the following excerpt:

But I think it's important for me to talk to you today and present this case, and all the facts that were there, and not to let the defense or anyone run over the State. I stand up in here for you. And I stand up in the courtroom today for Jay Lovelace. I stand up in here for our laws that we all believe in when an unarmed man is shot down and killed.

MR. IVY: We're going to object to that type of argument; it's prejudicial. It's an unfair inference, Your Honor.

THE COURT: Sustained.

The vindication of community outrage has been criticized by this Court recently in *Franks v. State*, 636 P.2d 361 (1981). The statements now before us are reprehensible for the reason that the prosecutor has attempted to cast himself in a light which is inaccurate. He does not represent the victim, the jurors, nor the interests of society. His duty is to prosecute the defendant for a crime against the victim, in violation of society's laws, and in which the jurors are the determiners of fact.

The trial court erroneously overruled one of the cited objections and sustained the remainder. It is obvious that the prosecutor's intentions were to prejudice the jury and to avoid a good faith closing argument, especially when one reflects upon the first and the final objectionable statements. In both, the prosecutor aligned himself with the victim, the latter argument even after the trial court had sustained the first objection.

We cannot and will not close our eyes to such behavior. To do so would be to ignore recent case law. *Wright v. State*, 637 P.2d 869 (Okl.Cr.1981); *Cobbs v. State*, 629 P.2d 368 (Okl.Cr.1981); *Watt v. City of Oklahoma City*, 628 P.2d 371 (Okl.Cr.1981). Neither can we find, as the State would urge, that the jury was unaffected by these comments. The jury could have assessed a punishment of ten years to life. The sentence of twenty-five years for a fifty-year old defendant easily could have been the result of the prosecutor's abusive statements. The actions of the District Attorney forces us to modify this sentence from twenty-five (25) to twenty (20) years' imprisonment.

CORNISH, J., concurs.

BUSSEY, J., not participating.